Betty Sue Fenton LUEG, Appellant,

v.

Carl Frederick LUEG, Jr., Appellee.

No. 13–96–353–CV.

Court of Appeals of Texas,
Corpus Christi.

Aug. 13, 1998.

Brenda Brown Perez, McAllen, for appellant.

Jane A. Brasch, Brasch & Taylor, Harlingen, Roel Flores, Neil E. Norquest, Chris A. Brisack, Norquest & Brisack, McAllen, Lisa L. Taylor, Law Offices of James Brach, Harlingen, for appellee.

Before DORSEY, YANEZ and RODRIGUEZ, JJ.

## OPINION

YANEZ, Justice.

Betty Sue Fenton Lueg appeals a final decree of divorce. By five points of error, she complains of the denial of her motion to recuse, the denial of her request for a jury trial, the legal effect given to an antenuptial agreement, the court's child custody order, and the dismissal of her wrongful discharge/workers' compensation claim. We affirm.

The first marriage between Betty Sue Lueg and appellee Carl Frederick Lueg, Jr., ended in divorce in 1981. Carl and Betty Sue remarried in 1982. In June 1995, Betty Sue filed an original petition for divorce from Carl in the 206th District Court of Hidalgo County. She averred that the marriage had become insupportable because of discord or conflict of personalities, but that she believed she and Carl would enter into both child support and property division agreements, which they would ask the court to approve. By his counter-petition, Carl stated that he should be appointed sole managing conservator of the children, but that he believed an agreement between he and Betty Sue as to property division would be made, subject to court approval. He requested a temporary restraining order against Betty Sue and that he be named temporary managing conservator of their children.

By her first amended petition for divorce, Betty Sue requested a disproportionate share of the marital estate for numerous reasons, two of which were fault in the dissolution of the marriage and disparity of earning power of the spouses. She also specifically denied the validity of an antenuptial agreement which purported to set out Carl's and Betty Sue's separate and community property during their marriage, and which referenced their former marriage. In the alternative, Betty Sue raised various defenses against the enforcement of this agreement.

On September 1, 1995, the Honorable Roel "Robie" Flores gave notice of his appearance as co-counsel for Carl Lueg in his cause of action. On September 29, 1995, Betty Sue filed a motion to recuse the presiding judge of the 206th District Court, the Honorable Joe B. Evins, on the grounds that Flores was Evins's past campaign manager and personal attorney in a separate but ongoing civil lawsuit. On October 12, 1996, Judge Evins signed an order denying the motion but, on this same day, also signed an order referring the motion to the administrative judge for the judicial district, which stated that he (Judge Evins) had not passed on the motion to recuse. The presiding judge of the administrative judicial district designated the Honorable Fernando Mancias to hear the motion. The motion was heard on October 16, 1995. Judge Mancias denied the motion in open court on the same day.

Betty Sue filed her third amended petition for divorce on November 1, 1995, by which she requested a disproportionate share of the community property and alleged various other causes of action against Carl, namely fraud in relation to the 1981 divorce and the subsequent antenuptial agreement, breach of fiduciary duty, and actual and constructive fraud. She claimed damages in excess of $2,000,000. She further claimed the antenuptial agreement was void.

By a final decree of divorce signed on March 26, 1996, the court appointed Carl sole managing conservator of the minor children of the marriage, found the antenuptial agreement valid, and ordered the property divided accordingly. Notice of appeal was timely filed.

By her first point of error, Betty Sue argues the trial court erred in failing to grant her motion to recuse. She argues that the attorney-client relationship between Flores and Judge Evins and their political relationship would cause a reasonable person to reasonably question the impartiality of Judge Evins, hence recusal was required.

Although both Judge Evins and Judge Mancias denied her motion to recuse, Betty Sue does not specify which judge's discretion she challenges. Because it is the denial of a motion to recuse by a judge to whom the motion has been referred that is appealable, *see* TEX.R. CIV. P. 18a(c), (d), (f), we will

assess the discretion Judge Mancias exercised.[1] In response to this point of error, Carl first urges us to distinguish this case from *Monroe v. Blackmon*, 946 S.W.2d 533 (Tex.App.—Corpus Christi 1997) *vacated*, 969 S.W.2d 427 (Tex.1998) in two respects: (1) *Monroe* was a pre-trial mandamus proceeding, whereas the instant case is on post-trial appeal; and (2) on the facts of *Monroe*, there was significant involvement by the trial court judge in the recusal hearing itself, whereas in this case there was "no involvement at all by the trial court judge in the actual disposition of the Motion to Recuse." He then argues that neither Judge Evins nor Judge Mancias abused his discretion, respectively, and argues that review of the record will indicate no bias manifest in Judge Evins's rulings throughout the trial. Carl also argues that Betty Sue's denial of Judge Evins's offer of a trial by jury following her unsuccessful motion to recuse should be taken as an expression of her confidence in Judge Evins's impartiality.

Rule of civil procedure 18b(2) provides, in part, that a judge shall recuse himself when his impartiality might be questioned or when he knows that he has an interest that could be substantially affected by the outcome of the proceeding. Tex.R. Civ. P. 18b(2)(a), (e). In *Rogers v. Bradley*, 909 S.W.2d 872 (Tex. 1995), Justice Enoch voted to overrule a motion to recuse the justices of the supreme court and wrote to explain his reasons. Upon review of the origins of this recusal provision in the American Bar Association Model Code of Judicial Conduct, construction of similar provisions by federal courts, and inconsistent inquiries under this provision in Texas courts, Justice Enoch concludes that in determining whether to recuse under rule 18b(2), the inquiry should be "whether a reasonable member of the public at large, knowing all the facts in the public domain concerning the judge's conduct, would have a

reasonable doubt that the judge is actually impartial." *Id.* at 881.

We review the denial of a motion to recuse under an abuse of discretion standard. Tex.R. Civ. P. 18a(f). Abuse of discretion occurs when the trial court acts without reference to any guiding rules and principles, *i.e.*, whether the action was arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985).

In the instant case, the following were alleged as grounds for recusal: (1) a close personal friendship between Judge Evins and Robie Flores, (2) during the course of the instant case, Flores was serving as Judge Evins's attorney in a civil action against Aida Flores, (3) Flores had served as Judge Evins's campaign manager in Judge Evins's most recent electoral campaign for judge of the 206th District Court.[2] At the hearing on the motion to recuse, Betty Sue testified that she believed Judge Evins's impartiality toward her might be compromised by Flores's status as Judge Evins's personal attorney and former campaign manager. As Flores himself observed in one of his questions to Betty Sue at the hearing, it is public record that he was representing Judge Evins in a separate civil matter; but, more importantly, Betty Sue testified that she learned of his representation of Evins from other attorneys as she tried to find a replacement attorney for herself. She admitted that she had no personal knowledge of bias or prejudice against her by Judge Evins, nor did she know of any financial interest Judge Evins might have in the instant lawsuit. She further testified that she did not know for sure whether Evins had any personal knowledge of facts surrounding her divorce. By her affidavit, Betty Sue indicated that Flores was representing Judge Evins in an action against Aida Flores.[3] Flores's co-counsel,

---

1. *But see Keene Corp. v. Rogers*, 863 S.W.2d 168, 171–72 (Tex.App.—Texarkana 1993, no writ) (silent as to whether any analytical issue is raised where both the judge whose recusal is sought and the judge to whom motion was referred denied the motion).

2. The motion does not give a time frame here, *i.e.*, it does not state exactly how many months or

years had passed since Flores served in this capacity.

3. Whether there is a familial relationship between Robie Flores and Aida Flores was not discussed in the motion to recuse, at the hearing on the motion, or developed in the record. Comments on the record by Judge Evins indicate that Aida Flores was one of his opponents in a primary election.

the Honorable Jane Akin Brasch, testified as to the expense involved in responding to the motion to recuse and, on cross-examination by Betty Sue's attorney, testified that she and Flores believed the motion to recuse was a delay tactic, in response to Betty Sue's failure to timely request a jury trial. Flores testified as to his attorney fees relating to the motion to recuse.

Rule 18b(2) does not overtly address the types of relationships between Judge Evins and Flores which Betty Sue complains of, and there is no Texas case law directly addressing such relationships. Where an attorney's client is a plaintiff in a civil law matter, nevertheless, we recognize that a reasonable member of the public at large could reasonably presume this client to have an interest in his personal attorney being the most successful and competent lawyer available, or at least being perceived as such, in consideration of financial or other interests which would motivate his suit. Hence we view the attorney-client relationship between Flores and Evins as a *prima facie* basis for recusal of the judge.

Under Justice Enoch's standard, nevertheless, the relevant perception of impartiality must be based on all the facts. In the context of an attorney-client relationship, there are an infinite number of circumstances that affect the determination of whether a judge's impartiality "might reasonably be questioned." These run the continuum from near-certainty of partiality to no reasonable questioning of impartiality. Questions relevant to the analysis might include: Did the attorney represent the judge only as the nominal party in a mandamus proceeding? Is the lawyer representing the judge as a defendant in an action involving his office along with other public officeholders? Is the judge one of a large class of plaintiffs in a class action? Is a lawsuit which affects the judge's financial or personal well-being at issue? How close a relationship exists in truth rather than merely in theory between the judge and the lawyer? What is the attendant publicity that might affect the public's perception of impartiality?

The record before Judge Mancias gave virtually no insight into the nature of Flores's representation of Evins. We thus have an insufficient basis for reaching the conclusion that recusal was mandated.

Similarly, the nature of the past campaign manager-candidate relationship between Flores and Evins also is not elucidated in the record before us. We know only that Flores was Evins's most recent campaign manager. As such, we may infer no more about this relationship than we would about the relationship between any lawyer who politically supports a judge through campaign contributions and the particular judge. As the El Paso Court of Appeals has observed, "Texas courts repeatedly have rejected the notion that a judge's acceptance of campaign contributions from lawyers creates bias necessitating recusal, or even an appearance of impropriety." *Aguilar v. Anderson,* 855 S.W.2d 799, 802 (Tex.App.—El Paso 1993, writ denied). We thus hold that, on the basis of the record before Judge Mancias, the past political relationship between Flores and Evins did not mandate recusal. Point of error one is overruled.

■ By her second point of error, Betty Sue claims the trial court erred in failing to grant a trial by jury and finding that she had waived her right to a jury. The following is the totality of her argument:

> Appellant filed a Request for a Jury Trial on this case, and, tendered the jury fee on or about September, 1995. Albeit, Appellant had various counsel throughout the litigation phase of this divorce, she never waived her right to a trial by jury. The Trial Judge abused his discretion in not allowing a trial by jury. (Please see Exhibit 1; "Request For Trial Jury.")

Exhibit 1 is a copy of Betty Sue's second amended original petition for divorce. In the prayer of the petition, she "requests a jury trial and pays the jury fee of $30.00." The record, nevertheless, reflects that at an October 24, 1995 hearing on pretrial motions, the court gave Betty Sue the option of having her case heard that same day before a jury or having her case continued but not heard by a jury. Betty Sue indicated that she did not want to go to trial this particular day because she and her lawyer were not ready.

If there was error by the court in making Betty Sue choose between a jury trial on October 24, 1995 or a non-jury trial on a subsequent date, no argument to this effect was made in the pretrial proceeding, notwithstanding Betty Sue's testimonial comment that she thought the situation was unfair. She therefore failed to preserve that matter. She expressly waived her right to a jury trial on that day. Point of error two is overruled.

■ By her third point of error, Betty Sue "asks only that the findings and rulings by the Trial Court be found to have been rendered an abuse of discretion to the detriment of Appellant against the great weight of the documentary and testimonial evidence." She mentions undisputed testimony that Carl had hired her attorney to prepare the disputed antenuptial agreement and that her divorce attorney could not recall many specific facts surrounding the drafting of the antenuptial agreement.[4] She also claims she had complete knowledge of the value and extent of Carl's property, and that upon the signing of the antenuptial agreement, no explanation of its contents was given. Rule 38.1(h) of the rules of appellate procedure, however, requires that an appellant's brief contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record. TEX.R.APP. P. 38.1(h). Betty Sue's brief cites us to no specific record references for these alleged facts on record. Perhaps more importantly, the facts she allege do not amount to a basis for holding that the court abused its discretion, because (a) she failed to show why any of the facts would belie, contradict, or undermine any particular finding by the court, and (c) in and of themselves, these few facts asserted do not give rise to a reasonable inference that the court erred in any capacity. We hold that Betty Sue waived her challenges to sufficiency of the evidence.

Under this same point of error, Betty Sue further urges the importance of jury verdicts under the Texas constitution, but this argument is not constructive. If Betty Sue's right to a jury trial had been violated, we would have reversed the judgment of the trial court and remanded this cause for a new trial without the necessity of reaching any further points of error, including this one. As an alternative to point of error two, the standing of jury verdicts in Texas is of no argumentative significance. Point of error three is overruled.

By her fourth point of error, Betty Sue makes two separate and distinct arguments. The first argument challenges the jurisdiction of the trial court; the second challenges the court's determination that its child custody ruling was "in the best interests" of the children. Regarding jurisdiction, she argues that another district court first acquired dominant jurisdiction over the interests of the children, and, as such, it retains jurisdiction to the exclusion of all other courts. Regarding the custody ruling, she argues that she presented witnesses who testified she was well-equipped to serve as managing conservator of the children.

■ *Jurisdiction.* As a general rule, a court that first acquires dominant jurisdiction in a suit affecting the parent-child relationship retains jurisdiction to the exclusion of other courts. *Curtis v. Gibbs,* 511 S.W.2d 263, 267 (Tex.1974). The family code, however, provides, that a court loses its continuing, exclusive jurisdiction to modify a child custody order if the parents of the child have remarried each other after dissolution of a previous marriage between them and file suit for the dissolution of the subsequent marriage combined with a suit affecting the parent-child relationship. TEX. FAM.CODE ANN. § 155.004(a)(2) (Vernon Supp.1998).[5] The 275th District Court had exclusive, continuing jurisdiction following Carl's and Betty Sue's first divorce and combined suit affecting the parent-child relationship, but Carl and Betty Sue remarried and re-divorced, so the subsequent court in which they filed for divorce combined with a suit affecting the parent-child relationship, the 206th, supplanted the 275th as to exclusive, continuing juris-

---

4. At this point, the brief also includes the following ambiguous phrase: "nor could he recall whether (Please refer to Deposition of Richard Smith) admitted into evidence as Exhibit IV."

5. We cite the current version of this provision because amendment to it subsequent to when the facts of this case developed have no bearing on the outcome of the case.

diction. We hold that the 206th district court's jurisdiction was proper.

*Custody order.* The following is the entirety of Betty Sue's argument on this issue:

> She presented witnesses including an expert witness which supported her position that she was well equipped to retain sole managing conservatorship if not joint managing conservatorship of the parties' three children. Her witnesses included Janice Ann Lackey, Charles Anthony Lueg, and Anne Marie Raders. Appellant's Expert Witness, Dr. J. Thomas Oldham, also Court testimonial credibility to the assertion that on the basis of the strength of these points at issue, Appellant should have been rewarded joint custody if not sole managing custody. Respondent failed to rebut that presumption at law with any viable fact testimony.

In short, Betty Sue's position appears to be (1) she presented witnesses who testified she would have been a good managing conservator and (2) the court should have found them credible. This is an argument as to how the court erred in its finding only if the claim really is that the court should not have found Betty Sue's witnesses particularly credible or more credible than any for Carl. Witness credibility, however, is within the exclusive purview of the trier of fact. *Nat'l Environmental Service Co., Inc. v. Homeplace Homes, Inc.*, 961 S.W.2d 632, 634 (Tex. App.—San Antonio 1998, no writ). Point of error four is overruled.

By her fifth point of error, Betty Sue claims the trial court erred in dismissing with prejudice her "third party wrongful discharge"claims against Rio Grande Resident Care, Inc. and Twinbrooke South Corporation, which, she claims, are Carl's alter egos. An examination of the record, however, reflects that in her petition she prayed for findings that these two corporations were Carl's alter egos, and that upon such a finding, "the court make a division of such alleged 'corporate' assets that [it] deems just and right." Thus, she did not make appurtenant or ancillary *wrongful discharge* claims against the two corporations. By its order, the trial court dismissed the causes against the corporations in this particular lawsuit, which were merely that they were Carl's alter egos for purposes of division of the marital estate. We hold that no wrongful discharge claims were raised in this suit or implicated by the trial court's order. Point of error five is overruled.

By his first cross point, Carl claims the court abused its discretion in ordering him to pay child support to Betty Sue. He argues that the family code does not contemplate that a sole managing conservator may be ordered to pay child support to a possessory conservator.

We agree. While the family code does authorize a court to order either parent or both to support a child "in the manner authorized by the order," TEX. FAM.CODE ANN. § 154.001(a) (Vernon 1996), the specific rights and duties assigned to sole managing conservators differ from those assigned to possessory conservators. Section 153.132 of the family code provides that a sole managing conservator has the exclusive right to receive and give receipt for child support payments and to hold or disburse these funds for the benefit of the child. TEX. FAM.CODE ANN. § 153.132(3) (Vernon 1996). No such right is expressly ascribed to the possessory conservator. *See id.* at § 153.192. We therefore hold that the family code does not contemplate a sole managing conservator paying child support to a possessory conservator. Carl was named sole managing conservator but ordered to pay child support to Betty Sue, who was named a possessory conservator. We hold this child support order improper. Cross point one is sustained.

By our disposition of Carl's first cross point we need not reach his remaining cross points. TEX.R.APP. P. 47.1.

Accordingly, we modify the trial court's judgment to delete the order that Carl pay child support to Betty Sue, and, as modified, the judgment is AFFIRMED.