**MODIFY, REFORM, and AFFIRM; and Opinion Filed May 15, 2013.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-11-01407-CR

### WILLIAM SCOTT YOUKERS, Appellant
### V.
### THE STATE OF TEXAS, Appellee

### On Appeal from the 219th Judicial District Court
### Collin County, Texas
### Trial Court Cause No. 219-80460-2011

## OPINION
Before Justices Bridges, O'Neill, and Murphy
Opinion by Justice Murphy

William Scott Youkers appeals the revocation of his community supervision and eight-year prison sentence for his conviction of assaulting his girlfriend. He contends (1) the trial judge lacked impartiality or neutrality based on ex parte communications, including a Facebook friendship with the girlfriend's father; (2) his trial counsel's assistance was rendered ineffective due to the Collin County Detention Center's delay in delivering a letter from his attorney; (3) the judge erred by denying his motion for new trial based on Youkers's refusal to waive his attorney-client privilege regarding the contents of the letter; and (4) the judge improperly assessed court-appointed attorney's fees. We modify the judgment to delete the award of attorney's fees and affirm the judgment as modified.

## BACKGROUND

Youkers was on parole for a previous felony conviction of tampering with evidence when he was indicted for assaulting his girlfriend, who was pregnant with his child. *See* TEX. PENAL CODE ANN. § 22.01(b)(2)(B) (West 2011). Youkers pleaded guilty to the assault allegations. Pursuant to a plea agreement, the judge assessed a ten-year prison sentence, suspended for five years, and a $500 fine. Approximately three months later, the State filed a motion to revoke Youkers's supervision, contending he violated the terms and conditions of his supervision by testing positive for methamphetamines, failing to submit to a urinalysis, failing to report as scheduled to his supervision officer, and failing to pay court-ordered fees and costs.

Youkers entered an open plea of true to the allegations in the motion and requested reinstatement of his community supervision. Youkers explained that he previously "didn't have a stable place to live," but he was now living with his mother, had started attending school, and hoped to continue studying. The judge sentenced Youkers to eight years' imprisonment and thereafter denied his motion for new trial. Youkers appealed.

## DISCUSSION

Youkers raises three issues on appeal. In his first two issues, which have subparts, Youkers contends the trial judge abused his discretion in denying Youkers's motion for new trial. We review a trial court's ruling on a motion for new trial under an abuse of discretion standard. *Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009). In conducting our review, we do not substitute our judgment for that of the trial court. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). We give great deference to the trial court's ruling and will overrule that decision only if it is arbitrary or unreasonable. *Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995). A trial court abuses its discretion in denying a motion for new trial only

when no reasonable view of the record could support the trial court's ruling. *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006).

## Judicial Bias

Youkers's first ground for reversing the trial judge's denial of his motion for new trial is his challenge to the judge's neutrality. Youkers describes two sources evidencing bias—(1) the judge's Facebook friendship with the father of Youkers's girlfriend, which continued during the pendency of the revocation hearing, and (2) emails to the judge from Youkers's community supervision officer.

### *Facebook Friendship*

After the judge sentenced Youkers to an eight-year prison term, Youkers filed a motion for new trial complaining "[t]here was an undisclosed friendship" between the judge and the father of Youkers's girlfriend, improper communications between the two, and influence over the judge by the father. He asserted the communications and relationship created both actual and apparent bias. Youkers relied on a private message the judge received on the judge's Facebook page approximately one week before Youkers's original plea and the ongoing status of the judge and the father as Facebook "friends."

The judge testified at the hearing on Youkers's motion for new trial that he knew the father because they both ran for office in the same election cycle. He testified they were designated as "friends" on Facebook and were "running at the same time," but that was "the extent of [their] relationship." The two were not related, and, other than the private Facebook messages, they had had no other contacts through Facebook. At the time of the hearing, they were still Facebook "friends."

The Facebook communications began with a message from the father to the judge seeking leniency for Youkers. That message was posted just prior to Youkers's original plea.

The judge responded online formally advising the father the communication was in violation of rules precluding ex parte communications, stating the judge ceased reading the message once he realized the message was improper, and cautioning that any further communications from the father about the case or any other pending legal matter would result in the father being removed as one of the judge's Facebook "friends." The judge's online response also advised that the judge was placing a copy of the communications in the court's file, disclosing the incident to the lawyers, and contacting the judicial conduct commission to determine if further steps were required. The father replied with a message apologizing for breaking any "rules or laws" and promising not to ask questions or make comments "relating to criminal cases" in the future.

At the hearing on Youkers's motion for new trial, the judge confirmed that he followed through based on his Facebook message—he placed a copy of the Facebook communications in the court file, he contacted both Youkers's attorney and the State's attorney to inform them of the communications, and he contacted the judicial conduct commission regarding the communications. He said these were the only Facebook communications he had with the father and he had not read any of the father's Facebook posts.

Youkers's complaint is that the judge's Facebook relationship with the father created actual and apparent absence of impartiality. Although Youkers's motion for new trial addressed both the communications and the online status of the father and the judge as Facebook "friends," his complaint on appeal focuses only on the online status.

No Texas court appears to have addressed the propriety of a judge's use of social media websites such as Facebook. Nor is there a rule, canon of ethics, or judicial ethics opinion in Texas proscribing such use. The general premise that judges are not prohibited from using social media is consistent with the current standards suggested by the American Bar Association, as well as recent articles addressing the topic. *See, e.g.*, ABA Standing Comm. on Ethics & Prof'l

–4–

Responsibility, Formal Op. 462 (2013) (concluding judge may participate in electronic social networking); Judge Susan Criss, *The Use of Social Media by Judges*, 60 THE ADVOC. (TEX.) 18 (2012); Judge Gena Slaughter & John G. Browning, *Social Networking Dos and Don'ts for Lawyers and Judges*, 73 TEX. B.J. 192 (2010).

Allowing judges to use Facebook and other social media is also consistent with the premise that judges do not "forfeit [their] right to associate with [their] friends and acquaintances nor [are they] condemned to live the life of a hermit.  In fact, such a regime would . . . lessen the effectiveness of the judicial officer."  Comm. on Jud. Ethics, State Bar of Tex., Op. 39 (1978). Social websites are one way judges can remain active in the community.  For example, the ABA has stated, "[s]ocial interactions of all kinds, including [the use of social media websites], can . . . prevent [judges] from being thought of as isolated or out of touch."  ABA Op. 462.  Texas also differs from many states because judges in Texas are elected officials, and the internet and social media websites have become campaign tools to raise funds and to provide information about candidates.  *Id.*; *see also* Criss, *supra*, at 18 ("Few judicial campaigns can realistically afford to refrain from using social media to deliver their message to the voting public. Social media can be a very effective and inexpensive method to deliver campaign messages to the voting public.").

While the use of social media websites such as Facebook "can benefit judges in both their personal and professional lives," the use presents concerns unique to the role of the judiciary in our justice system.  ABA Op. 462.  An independent and honorable judiciary is indispensable to justice in our society.  *In re Thoma*, 873 S.W.2d 477, 496 (Tex. Rev. Trib. 1994, no appeal). Thus, judges must be mindful of their responsibilities under applicable judicial codes of conduct. *See* ABA Op. 462; TEX. CODE JUD. CONDUCT, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. B (West 2005).

The preamble to the Texas Code of Judicial Conduct first reminds us of the role of the judiciary and provides that intrinsic to all sections of the code are the precepts that judges must respect and honor their judicial office as a public trust. TEX. CODE JUD. CONDUCT, Preamble. The individual canons are intended to state basic standards for judicial conduct and to provide guidance to judges. *Id*. Several of those canons are relevant to our analysis of Youkers's issue.

Canon two provides that judges "should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary" and "shall not allow any relationship to influence judicial conduct or judgment." *Id.* Canon 2(A), (B). It follows that the judge may not "convey or permit others to convey the impression that they are in a special position to influence the judge." *Id*. Canon 2(B). Similarly, canon four cautions a judge to conduct all extra-judicial activities to avoid casting reasonable doubt on the judge's capacity to act impartially as a judge. *Id*. Canon 4(A).

Canon three also addresses the judge's duty of impartiality and prohibits, with limited exceptions, any direct or indirect ex parte communications concerning the merits of a pending or impending judicial proceeding. *Id*. Canon 3(B)(8). An ex parte communication is one that involves fewer than all parties who are legally entitled to be present during the discussion of any matter with the judge. *Erskine v. Baker*, 22 S.W.3d 537, 539 (Tex. App.—El Paso 2000, pet. denied). Ex parte communications are prohibited because they are inconsistent with the right of every litigant to be heard and with the principle of maintaining an impartial judiciary. *Abdygapparova v. State*, 243 S.W.3d 191, 208 (Tex. App.—San Antonio 2007, pet. ref'd). This proscription applies regardless of whether the communication occurs through a social media website, in the judge's chambers, or elsewhere. That is, while the internet and social media websites create new venues for communications, our analysis should not change because an ex parte communication occurs online or offline.

A judge must recuse in any proceeding in which "the judge's impartiality might reasonably be questioned" or "the judge has a personal bias or prejudice concerning the subject matter or a party." TEX. R. CIV. P. 18b; *see also Gaal v. State*, 332 S.W.3d 448, 452 (Tex. Crim. App. 2011). Recusal based on bias is not required simply because of a business relationship or acquaintance with a party. *See Woodruff v. Wright*, 51 S.W.3d 727, 737–38 (Tex. App.—Texarkana 2001, pet. denied) (noting appearance of impropriety determined by reasonable person with all facts; mere business relationship, that included judge's performance of wedding ceremony for defendant and defendant's surgery on family member of judge, insufficient for reasonable person to find bias).

Merely designating someone as a "friend" on Facebook "does not show the degree or intensity of a judge's relationship with a person." ABA Op. 462. One cannot say, based on this designation alone, whether the judge and the "friend" have met; are acquaintances that have met only once; are former business acquaintances; or have some deeper, more meaningful relationship. Thus, the designation, standing alone, provides no insight into the nature of the relationship. *See Lueg v. Lueg*, 976 S.W.2d 308, 311 (Tex. App.—Corpus Christi 1998, pet. denied) (concluding recusal not required where one party's attorney was judge's past campaign manager; that designation alone provided no insight into the nature of the relationship). Further context is required. *See id.*; ABA Op. 462.

The judge testified at the hearing on Youkers's motion for new trial regarding the nature of the relationship with the father. He stated they were running for office at the same time—that was "the extent of [their] relationship." That evidence, with no other context, provides no insight into any relationship that would influence the judge and lead to bias or partiality. *See Lueg*, 976 S.W.2d at 311. The record also does not show the father had a role in Youkers's revocation hearing or was called as a witness.

The record regarding the earlier Facebook communications also provides no additional context that would support Youkers's suggestion of bias. We first observe the communication was not adverse to Youkers; the father sought leniency. Additionally, the judge stated that he ceased reading the father's message once he realized it was an ex parte communication; he emphasized, "I have not considered any of the information in your e-mail as it would be improper for me to do so." The judge also acted in full compliance with the Texas Committee on Judicial Ethics' recommended procedure for treatment of ex parte communications. *See* Comm. on Jud. Ethics, State Bar of Tex., Op. 154 (1993) (providing that judge receiving ex parte communication from litigant may comply with canon 3B(8) by placing the communication in clerk's file; providing the communication to all parties; determining if the communication is proper; and, if it is not, advising the communicant that all ex parte communications must cease).

Youkers asserts that even if actual bias is absent, the evidence shows an appearance of bias. Specifically, he relies on an affidavit from Youkers's mother filed in support of the motion for new trial. In that affidavit, the mother states that "[the father] said that he had influence with [the judge] and would help [Youkers] with his case." The appearance of impropriety must be determined by a "reasonable person" who is in possession of all of the facts. *Woodruff*, 51 S.W.3d at 738. A reasonable person in possession of all of the facts in this case likely would conclude the contact between the judge and the father did not cause the judge to abandon his judicial role of impartiality; besides the evidence that the judge and the father's acquaintance was limited, any appearance of bias created by the Facebook communications was dismissed quickly by the judge's handling of the situation.

We acknowledge the judge had an obligation not to let the father convey the impression that he was in a special position to influence the judge. TEX. CODE JUD. CONDUCT, Canon 2(B). Assuming the father made the improper statement to Youkers's mother suggesting he had

influence with the judge, the record contains no evidence the judge was aware of the statement. Importantly, the judge quickly disposed of any suggestion by his full disclosure of the Facebook communications, and his judgment in no way supports any implication of influence. Based on the facts in this record, we conclude the trial judge did not abuse his discretion in denying Youkers's motion for new trial based on his Facebook-based claims of bias.

### *Community Supervision Officer*

Youkers also complains that ex parte emails sent by his community supervision officer created judicial bias. Youkers was placed on five years community supervision on June 2, 2011. Approximately two months later, on August 18, the officer emailed the judge letting the judge know she was sending a notice of violation regarding Youkers's case. She stated that, "I just wanted to give you advanced notice so that you would keep an eye out for it. I am very concerned about this case." The officer then emailed a notice of violation to the State. On September 20, the officer sent another email to the judge. Attached to this email was a memorandum from the officer advising the judge that "[i]t is believed that Mr. Youkers is a major threat to both himself and others." The State filed its motion to revoke Youkers's community supervision that same day, and a capias was issued based on Youkers's probation violation.

Youkers argues this record shows the judge predetermined Youkers's sentence based on his community supervision officer's emails informing the judge of Youkers's "poor character" before the probation hearing; he claims this information was not introduced as evidence at any hearing in the case "yet it clearly prejudiced [the judge's] impartiality such that he was unable to consider the full range of punishment and mitigating evidence."

The State contends Youkers waived this complaint because he failed to raise the issue in the motion for new trial or at the hearing. Youkers asserts he could not raise this complaint in

the motion for new trial because the emails were not part of the "public" file and he was unaware of them until the Clerk's Record was filed in this appeal.

The Clerk's Record filed in this appeal is the record that was available to the public. That record shows the community supervision officer's August 18 email was stamped with the Collin County District Clerk's file mark on August 19, 2011 and was filed prior to the September 20 motion to revoke. Similarly, the September 20 email and memorandum (the same date the motion to revoke was filed) are part of the same record; they are placed in the file directly after the motion to revoke and just before the file-marked capias showing the sheriff's return of service. Accordingly, Youkers's statements that the communications were not disclosed and not discoverable are incorrect. Youkers thus has failed to preserve any objection to the communications by failing to present his complaint to the trial judge. *See* TEX. R. APP. P. 33.1(a). The record also contains no evidence the judge predetermined Youkers's sentence or failed to consider the evidence presented.

Due process requires a neutral and detached hearing body or officer. *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006). Absent a clear showing of bias, a trial court's actions will be presumed to have been correct. *Id.* A judge's remarks during trial that are critical, disapproving, or hostile to a party "usually will not support a bias or partiality challenge, although they *may* do so if they reveal an opinion based on extrajudicial information." *Gaal*, 332 S.W.3d at 454.

As evidence of the judge's bias, Youkers identifies statements made at the revocation hearing, which he asserts show a predetermined sentence based in part on the officer's emails. Specifically, the judge stated that the reason he was "leaning towards greater force rather than less force" was because "when a smart person is left unmonitored or lightly monitored, they are the ones who are more able to quickly figure out how to get around . . . and not necessarily

–10–

follow the rules." He further explained to Youkers that he was giving him two years less than the maximum sentence "in the hopes that you use your intelligence to realize that you've got to fix these things and not keep trying to fix them to the minimum to where people stop watching you. Because the moment you are unwatched, you are untrustworthy."

These statements are supported by the evidence. Youkers's mother testified about Youkers's "high IQ" shortly before the trial judge commented regarding Youkers's intelligence. She described Youkers as having "been through a lot in his life," detailing some of the abuse he had suffered from his father. When the judge questioned Youkers's mother regarding "the least amount of force" needed to "get [Youkers] to stop screwing up," his mother explained that "now" he had a child he loved very much and he had a passion to go to school. She then admitted "[n]obody was stopping him from doing that" earlier and she could not "make excuses." She agreed she would probably "try to train him until he's 43" because she is "his mom" and loves him. The judge also asked the mother "[w]hat's different today than any of the other times that he's come before the Courts and asked for mercy?" Continuing to admit she could not make excuses for her son, she described terrible abuse he had endured as a child and asked that her son be given a chance.

Youkers also testified. He said his mother had "rules" she expected him to abide by when he lived with her; yet when he stayed with others, he "used." He stated he needed help, including "a stable place to stay." Additionally, Youkers's record showed numerous violations. His prior probation for the tampering with evidence conviction was revoked because he did not "show up." He admitted he used drugs while on probation for that conviction and he assaulted his pregnant girlfriend by choking her. He then received probation for the assault family violence conviction, and he again used methamphetamine and quit attending counseling at Hope's Door because he was not living close enough to ride his bike.

–11–

It was only after hearing all of the evidence that the judge stated, "[b]ased on the totality of the information presented to the Court at [the] hearing and [his] review of the file," he was sentencing Youkers to eight years in prison. The judge added the statement (about which Youkers complains) that he believed he was "making a mistake and it should be a bigger number"; he was giving Youkers two years less than the maximum sentence "in the hopes that [Youkers] use [his] intelligence to realize that [he's] got to fix these things and not keep trying to fix them to the minimum to where people stop watching [him]. Because the moment [he is] unwatched, [he] is untrustworthy."

The evidence supports the judge's comments, which do not reflect bias, partiality, or the judge's failure to consider the full range of punishment. *See Brumit*, 206 S.W3d at 645. We conclude the trial judge did not abuse his discretion in overruling Youkers's motion for new trial based on complaints regarding tribunal partiality.

**Ineffective Assistance of Counsel**

Youkers also asserts that a mail delay at the Collin County Detention Center rendered his trial attorney's assistance ineffective. Specifically, he blames the center for the mail delay, which resulted in his failure to receive a letter from his attorney advising of a plea offer. Youkers claims that immediately after the revocation hearing in which the judge sentenced him to an eight-year prison term, he returned to his cell to find a letter from his attorney. The letter had been sent approximately six days earlier. Youkers testified by affidavit that "[w]hen I read the letter I was devastated, had I received it earlier it would have caused me to change my plans and accept the plea offer which had been offered me by the State."

Youkers does not argue he was unaware of the offer at the revocation hearing. Conversely, he testified he spoke with his attorney before the hearing. That attorney is the same attorney who drafted the letter Youkers claims he did not receive. The attorney advised Youkers

–12–

prior to the revocation hearing of the State's two-year offer as well as a second offer she was able to negotiate. Specifically, Youkers's attorney testified she had the opportunity to speak with Youkers before the revocation hearing. She said she had spoken with the prosecuting attorney before the hearing, and the State was willing to "continue [Youkers] on probation and let him go into [Substance Abuse Felony Punishment]." She testified she conveyed both offers to Youkers, but he "decided not to take [the SAFP] offer or the two TDC . . . ." Thus, Youkers was aware of two plea offers and refused both.

Despite Youkers's and his attorney's testimony at the revocation hearing, Youkers claims he would have taken the offer had he read the letter. The wording of the letter was not before the judge. Nor is the letter before this Court. Youkers stated in his affidavit that the letter contained "some critical advice and the result of an investigation [his trial attorney] had conducted." In her testimony at the hearing on Youkers's motion for new trial, his attorney verified the letter contained the terms of the offer made by the State, "what the rights on a revocation are, the ramifications, the range of punishment, etcetera." When the State tried to question the attorney about the letter's specific contents, however, Youkers's appellate attorney (who represented him during the hearing on the motion for new trial) objected on the basis of the attorney-client privilege. The judge sustained the objection.

To prevail on an ineffective assistance of counsel claim, an appellant typically must show by a preponderance of the evidence both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009). He must demonstrate under the first prong that his attorney's performance fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 687–88; *Ex parte Lane*, 303 S.W.3d 702, 707 (Tex. Crim. App. 2009). To meet the second prong, the appellant must show the existence of a reasonable probability, sufficient to undermine

–13–

confidence in the outcome, that but for his attorney's deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694; *Ex parte Lane*, 303 S.W.3d at 707. Prejudice may be presumed in a few situations. *Ex parte McFarland*, 163 S.W.3d 743, 752 (Tex. Crim. App. 2005). One of those is "state interference" with counsel's assistance. *Id.*; *see also Strickland*, 466 U.S. at 692.

Both the United States Supreme Court and the Texas Court of Criminal Appeals have recognized the Sixth Amendment's right to counsel can be violated when the government adversely affects an attorney's ability to perform the attorney's duties. *See Geders v. United States*, 425 U.S. 80, 91 (1976); *Batiste v. State*, 888 S.W.2d 9, 18–19 (Tex. Crim. App. 1994). Relying on *Geders*, Youkers argues that an ineffective assistance of counsel claim can be premised on government action that blocks the free flow of communication between attorney and client, and "it is clear that this right is violated where the government takes any actions—intentional or otherwise—that hinders this right."

In *Geders*, the Supreme Court concluded that a trial court's order banning attorney-client consultation during an overnight recess deprived the defendant of his Sixth Amendment right to trial counsel. *See Geders*, 425 U.S. at 91. Similarly, the Texas Court of Criminal Appeals concluded a prisoner's right to counsel was violated by a sheriff's refusal to allow the defendant to speak to his attorney outside the sheriff's presence. *See Turner v. State*, 241 S.W. 162, 164 (Tex. Crim. App. 1922). Neither factual scenario is present here.

Youkers was not deprived at any time of his right to consult with his attorney. Nor does he claim he was not allowed to confer with counsel in private. Instead, he argues it is well established that a failure to inform a defendant of a plea offer made by the State is an omission that falls below an objective standard of reasonableness.

–14–

To support this claim, Youkers also relies on *Ex parte Lemke*, 13 S.W.3d 791, 795 (Tex. Crim. App. 2000), *overruled on other grounds by Ex parte Argent*, 393 S.W.3d 781 (Tex. Crim. App. 2013). In that case, the defendant's attorney told him the State had not offered any plea bargains, when in fact the State had offered him two. *Ex parte Lemke*, 13 S.W.3d at 794. The defendant became aware of the plea offers several months after his sentencing when he testified against his trial counsel in an unrelated matter. *Id.* at 794–95. The court concluded the attorney's failure to relay the offer to his client fell below an objective standard of professional reasonableness and, as a remedy, required the government to reinstate the original offer. *Id.* at 796, 798.

Youkers's facts are distinguishable from *Ex parte Lemke*. The trial attorney in *Ex parte Lemke* failed to tell the defendant that there was any plea offer on the table; the defendant was left with the justified misunderstanding that the State had provided no offer. *Id.* at 794. In contrast, Youkers testified his trial attorney told him about the plea offer before the revocation hearing, the attorney confirmed the information provided, and Youkers rejected the offer. Youkers, unlike the defendant in *Ex parte Lemke*, did not miss the opportunity to accept a plea offer because he did not know about it. He missed the opportunity because he chose not to accept it.

The burden of proving ineffectiveness rests upon the defendant and requires proof by a preponderance of the evidence. *Rodriguez v. State*, 899 S.W.2d 658, 665 (Tex. Crim. App. 1995). Youkers has not met that burden, and the trial judge did not abuse his discretion in denying Youkers's motion for new trial.

**Waiver of Attorney-Client Privilege**

Youkers also contends the judge abused his discretion in denying his motion for new trial because the judge improperly based his denial on Youkers's refusal to waive his attorney-client

–15–

privilege. Youkers testified in support of his motion for new trial he would have accepted the State's plea offer had he received his attorney's letter earlier. Yet he refused to testify to the contents of the letter based on the attorney-client privilege. In response to the judge's observation that Youkers's argument "he would have changed his actions based on what's in the letter . . . . would make the contents of that letter quite relevant," Youkers's attorney insisted the contents of the letter were privileged. The judge asked, "Since he's talking about them, don't you think he's waived it?" His attorney maintained there was no waiver, and the judge sustained the objection.

During closing arguments on Youkers's motion for new trial, the judge interrupted Youkers's attorney and asked, "You want me to grant a Motion for New Trial based on the contents of a letter that I don't know if it says something of any significance or it says the moon is made of green cheese?" The attorney responded that the motion should be granted because Youkers was "prevented from receiving a communication from [his] attorney" and he "testified had he received it timely he would have altered his course in a criminal action." The judge questioned how—without knowing the contents of the letter—Youkers would "expect any fact finder to make a credible determination as to whether or not that belief is reasonable or unreasonable?" The attorney argued Youkers's testimony that the letter made a difference to him and it would have changed his course of conduct had he received it was sufficient to show "denial of significant aid from his attorney." The judge denied the motion.

Youkers claims error in the judge's denial of his motion, arguing to "deny a motion for new trial based upon the correct raising of a privilege . . . was to deny [Youkers] his Constitutional right to effective counsel due to his refusal to waive a well established privilege." The State responds that Youkers has produced no evidence the motion was denied because he refused to waive the privilege; while the judge did raise questions regarding whether he could

grant the motion without knowing the contents of the letter, the judge did not state this was the basis of his denial. The State also argues Youkers waived his attorney-client privilege by raising the ineffective assistance of counsel claim. Youkers did not request findings of fact and conclusions of law to establish the basis of the judge's ruling.

The attorney-client privilege is not absolute; it may be waived. *Ballew v. State*, 640 S.W.2d 237, 240 (Tex. Crim. App. [Panel Op.] 1980). One way the privilege can be waived is by litigating a claim against an attorney for a breach of legal duty. *See Joseph v. State*, 3 S.W.3d 627, 637 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

Youkers necessarily placed in issue privileged communications when he argued his attorney breached her legal duty to provide effective assistance of counsel. By doing so, he effectively waived his attorney-client privilege. *See id.* at 638. When he refused to disclose the contents of the letter on which he relies as the basis for a new trial, he failed to provide sufficient evidence to meet his burden of proving his attorney was ineffective. *See Rodriguez*, 899 S.W.2d at 665 (noting defendant bears burden of proving by preponderance of evidence counsel's ineffective assistance). Simply stated, Youkers cannot hide behind the privilege. He was required to meet his burden of showing ineffective assistance of counsel, and the attorney-client privilege does not relieve Youkers of that burden. On this record, we cannot conclude the judge abused his discretion by denying Youkers's motion for new trial.

### Assessment of Attorney's Fees Against Youkers

Youkers's final argument is that the trial judge erred in assessing court-appointed attorney's fees against him. Specifically, the judge found Youkers to be indigent and provided court-appointed counsel as requested by Youkers. Yet the judge assessed the court-appointed attorney's fees as costs and taxed the fees against Youkers as part of the judgment revoking his community supervision. The State agrees the assessment was in error.

Once a trial court finds a criminal defendant to be indigent, the defendant is presumed to remain indigent for the remainder of the proceedings unless a material change in the defendant's financial resources occurs. *See* TEX. CODE CRIM. PROC. ANN. art. 26.04(p) (West Supp. 2012). For the trial court to assess attorney's fees, it must determine the defendant has the financial resources that enable the court to offset those costs. *Id.* art. 26.05(g); *see also Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010); *In re Daniel*, No. AP-76959, 2013 WL 1628937, at *2 (Tex. Crim. App. Apr. 17, 2013) (orig. proceeding). The record also must show some factual basis to support the trial court's determination. *See Barrera v. State*, 291 S.W.3d 515, 518 (Tex. App.—Amarillo 2009, no pet.).

The record contains no evidence of a material change in Youkers's financial circumstances once the judge found him to be indigent. Accordingly, the evidence is insufficient to justify the trial judge's assessment of attorney's fees against Youkers. *See Mayer*, 309 S.W.3d at 556.

When the evidence does not support the assessment of attorney's fees as court costs, the proper remedy is to modify the judgment to delete the requirement. *Id.* at 557. We therefore modify the judgment revoking Youker's community supervision by deleting the assessment of attorney's fees.

## CONCLUSION

Youkers has failed to show actual or apparent lack of tribunal neutrality. The judge's designation as a Facebook "friend," without context providing insight into the nature of the relationship, was insufficient to show bias. Youkers also failed to meet his burden of showing the government's mail delay rendered his attorney's assistance ineffective. The plea offer purportedly referenced in the letter was conveyed by his attorney prior to the revocation hearing and Youkers rejected the offer. The judge also did not abuse his discretion in denying Youkers's

motion for new trial when Youkers refused to disclose the contents of the letter and the only information known to the judge—that the letter contained a plea offer—was conveyed to Youkers properly and timely. We therefore overrule issues one and two. Regarding issue three, that the trial judge improperly assessed court-appointed attorney's fees against Youkers, we sustain the issue and modify the judgment to delete the assessment. We affirm the judgment as modified.



/Mary Murphy/
_____
MARY MURPHY
JUSTICE

Publish
TEX. R. APP. P. 47.2

111407F.P05

–19–



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

WILLIAM SCOTT YOUKERS, Appellant

No. 05-11-01407-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 219th Judicial District Court, Collin County, Texas

Trial Court Cause No. 219-80460-2011.
Opinion delivered by Justice Murphy.
Justices Bridges and O'Neill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

The paragraph on page 2 of the judgment that states:

It is further Ordered that the cost to Collin County for the payment of this defendant's court-appointed attorney, if any, is taxed against this defendant as court cost. The District Clerk is granted leave to amend the court cost to reflect this amount without the necessity of a further order.

is **DELETED**  from the judgment.

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 15th day of May, 2013.

/Mary Murphy/
_____
MARY MURPHY
JUSTICE

–20–