# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### November 13, 2013 Session

## STATE OF TENNESSEE v. SHANTERRICA MADDEN

**Appeal from the Circuit Court for Rutherford County**
**No. 66473      Hon. Don R. Ash, Judge**

---

**No. M2012-02473-CCA-R3-CD - Filed March 11, 2014**

---

CAMILLE R. MCMULLEN, J., concurring.

I join with the majority in this case. I write separately, however, to further elaborate on whether the trial judge's status as a "Facebook friend" with a prospective witness, standing alone, is sufficient to require recusal. Here, Appellant moved for recusal alleging the trial judge was biased based on his affiliation with MTSU, the judge's alma mater. Specifically, Appellant claimed she was denied a fair and impartial trial due to the trial judge's Facebook connections with the MTSU women's basketball team and their coach, a prospective State's witness. Rather than an actual conflict of interest, Appellant contends that the trial judge's Facebook connection gave the appearance of impropriety in violation of the Tennessee's Code of Judicial Conduct.[1]

Tennessee, like the majority of states addressing the impact of social media on the judiciary, has done so through a judicial ethics opinion, upon which Appellant heavily relies in support of her argument. See Tennessee Judicial Ethics Advisory Opinion, No. 12-01, (October 23, 2012) (concluding that "while judges may participate in social media, they must do so with caution and with the expectation that their use of the media likely will be scrutinized"); see also New York Advisory Comm. On Judicial Ethics, Op. 08-176 (2009)

---

[1] The Code of Judicial Conduct imposes on judges an obligation to promote public confidence in the judiciary at all times. See Tenn. Sup. Ct. R. Rule 10, RJC 1.2. The Preamble to Rule 10 provides, in relevant part:

> Judges should maintain the dignity of judicial office at all times, and avoid both impropriety and the appearance of impropriety in their professional and personal lives. They should aspire at all times to conduct that ensures the greatest possible public confidence in their independence, impartiality, integrity, and competence.

Tenn. Sup. Ct. R. 10, Preamble.

(allowing judges to utilize social media without restriction); Connecticut Committee on Judicial Ethics 2013-06 (same); ABA Formal Op. 13-462 (Feb. 21, 2013) (same); Fla. Judicial Ethics Advisory Comm., Op 2009-20 (2009) (allowing judges to join social media sites but prohibiting them from "friending" any attorneys that may appear before them); California Judicial Ethics Opinion 66 (articulating a list of factors to determine whether otherwise permissible online friendships could raise an appearance of impartiality including the nature of the social networking site, the number of friends, the judge's inclusivity or exclusivity in friend selection, and the regularity with which the attorney appeared before the judge).

Appellant's reliance on Tennessee Judicial Ethics Advisory Opinion No. 12-01 provides her little relief.[2] As pointed out by the State, this advisory ethics opinion was issued five months after the Appellant's trial. In addition, while judicial ethics opinions constitute a "body of principles and objectives upon which judges can rely for guidance," see Tenn. Sup. Ct. R. 9 § 26.6 (h), they do not have the force of law. See State v. Jones, 726 S.W.2d 515, 519 (Tenn. 1987). Finally, these issues aside, recusal of the trial judge was not required under this ethics opinion because it permits judges to utilize social media so long as they are mindful of their ethical obligations.[3]

As in every motion to recuse a judge, the primary question is whether "a person of ordinary prudence in the judge's position, knowing all the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." Alley v. State, 882 S.W.2d 810, 820 (Tenn. Crim. App.1994). The test for appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality, and competence is impaired. Tenn. Sup. Ct. R. 10, Commentary to Canon 2 (2011). In her brief to this court, Appellant does not point to any specific section of the transcript to demonstrate the trial court's bias. Instead, she generally criticizes the trial judge's temperament and states "even a cursory reading of the transcripts" shows the trial judge was partial. By failing to specify the conduct supporting the trial judge's bias, Appellant runs the risk of waiving this issue. Moreover, Tennessee courts have held that complaints regarding the "contentiousness of the proceedings nor any of the trial court's rulings do not constitute 'a reasonable basis for questioning the judge's impartiality.'" See In re Conservatorship of John Daniel Tate, No. 2012-01918-COA-10B-

_____

[2] At the time of the hearing, it appears Appellant advocated for the trial judge to recuse himself based on Florida's judicial ethics opinion, which is in conflict with the ethics opinion in Tennessee and prohibits trial judges from being Facebook friends with attorneys.

[3] The Tennessee ethics opinion noted that a judge's use of social media implicates several provisions in the Code of Judicial Conduct including Canon 1, Rule 1.2, Comments [1]-[5], Canon 2, Rule 2.4 (B) and (C); Rule 2.9 (A); Rule 2.11 (A)(1) & A(5); Canon 3, Rule 3.1(A)-(C).

CV, 2012 WL 4086159, at *3 (quoting State v. Hester, 324 S.W.3d 1,73 (Tenn. 2010)). Nevertheless, my review of the record does not evince bias against Appellant by the trial court.

Finally, Appellant claims that the trial judge's act of deleting or "defriending" an unknown quantity of his friends upon notice of the motion to recuse violated his obligation to "disclose on the record information that the judge believe[d] the parties or their lawyers might reasonably consider relevant to a motion for disqualification[.]"[4] At the hearing on the motion to recuse, the trial judge and Appellant's counsel thoroughly vetted the trial judge's affiliation with MTSU. The trial judge noted that MTSU was not a party to the case and that both the victim and the Appellant attended MTSU. The trial judge apparently had over 1500 Facebook "friends," including the MTSU women's basketball coach, a prospective State's witness. There was no discussion of the significance of this witness's testimony or whether it would be adverse to Appellant. An affidavit from this witness noted that (1) the trial judge had made small donations to the basketball program; (2) the trial judge was not listed as a friend on his social network; (3) he had over 4,900 Facebook friends and had never met the trial judge; and (4) he was unaware if the trial judge had received mass mailings from his office or whether he had directly or indirectly communicated with the judge through Facebook. As Appellant's counsel narrowed his complaint to the trial judge's Facebook activity, it became clear that neither he nor the trial judge had a full understanding of the public or private nature of a Facebook page. Nevertheless, there was no proof offered to demonstrate bias other than the trial judge's designation as Facebook friends with the prospective witness.

Recently, in State v. Forguson, No. M2013-00257-CCA-R3-CD, 2014 WL 631246 at *13 (Tenn. Crim.App. Feb. 18, 2014), this court specifically addressed whether a trial judge's Facebook "friendship" with a confidential informant required recusal. Because the record failed to show "the length of the Facebook relationship between the trial court and the confidential informant, the extent of their internet interaction or the nature of the interactions," we concluded that there was not sufficient proof showing that the trial court could not impartially fulfill its duty as thirteenth juror. Id. Other states that have addressed whether a trial judge's designation as a Facebook friend with a witness or party, standing alone, requires recusal have similarly concluded that it does not. Cf. Youkers v. State, 400 S.W.3d 200 (Tex. App. May 15, 2013) (noting that designation of Facebook friend alone provides no insight into the nature of the relationship); with Chace v. Loisel, --- So.3d ----, No. 5D13-4449, 2014 WL 258620 (Fla. App. 5 Dist. Jan 24, 2014) (relying on judicial ethics

---

[4] "A judge should disclose on the record information that the judge believes the parties or their lawyers might consider relevant to the question of disqualification, even if the judge believes there is no real basis for disqualification." Commentary to Rule 10, Canon 3(E)(2011).

opinion prohibiting trial judges from engaging in social media with attorneys to require recusal based solely on "Facebook friendship" with prosecutor). In addressing a similar issue pertaining to juror bias based solely on a Facebook friendship, the Kentucky Supreme Court stated that "[i]t is now common knowledge that merely being friends on Facebook does not, per se, establish a close relationship from which bias or partiality can be presumed [.]" See McGaha v. Commonwealth, 414 S.W.3d 1, 6 (Ky. 2013), as modified (Sep 26, 2013). The following reasoning applied:

> [F]riendships on Facebook and other similar social networking websites do not necessarily carry the same weight as true friendships or relationships in the community, which are generally the concern during voir dire. The degree of relationship between Facebook "friends" varies greatly, from passing acquaintanceships and distant relatives to close friends and family. The mere status of being a "friend" on Facebook does not reflect this nuance and fails to reveal where in the spectrum of acquaintanceship the relationship actually falls. Facebook allows only one binary choice between two individuals where they either are "friends" or are not "friends," with no status in between.

Sluss v. Commonwealth, 381 S.W.3d 215, 222–23 (Ky. 2012). Moreover, "[b]ecause of the open and casual nature of [electronic social media ("ESM")] communication, a judge will seldom have an affirmative duty to disclose an ESM connection." ABA Formal Op. 13-462 (Feb. 21, 2013)(noting that "nothing requires a judge to search all of the judge's ESM connections if a judge does not have specific knowledge of an ESM connection that rises to the level of an actual or perceived problematic relationship with any individual").

In this case, although one Facebook "friendship" was sufficient to scrutinize the judge's impartiality, the record does not demonstrate more than a "virtual" acquaintance between the trial judge and the prospective witness. To the extent that any appearance of impropriety arose from this acquaintance, it was diminished by the trial court's action in fully disclosing his ties with MTSU and his concession that he had once met the witness in-person and had been Facebook friends with the prospective witness. It also bears noting that this witness was 1 of 1500 Facebook friends of the trial judge. He was not a witness to the murder and his testimony at trial focused primarily on the team's zero-tolerance drug policy. Appellant's frustration with the trial judge's action in "defriending" the Facebook connections without her knowledge, however, is understandable. Certainly, the better practice would have been for the trial judge to acknowledge the Appellant's discovery of the Facebook connections and consult with the parties prior to deleting them. However, given that Tennessee permits trial judges to engage in social media, deleting or "defriending" a potential witness before trial is the best remedy to avoid passive receipt of unwanted online

-4-

communications during trial.[5]  A reasonable person in possession of the same facts and circumstances would conclude that there was no basis to question the judge's impartiality in this case; therefore, the judge did not abuse his discretion in denying the motion to recuse.

_____
CAMILLE R. MCMULLEN, JUDGE

---

[5] Facebook raises concerns about ex parte communications and "passive reception of information." See Nathaneal J. Mitchell, Judge 2.0: A New Approach to Judicial Ethics in the Age of Social Media, 2012 Utah L. Rev. 2127, 2133 (2012).  "Social media sites, unlike more traditional sources of information like newspapers, facilitate the flow of unsought information and require users to take active steps to limit the receipt of information by creating filters, limiting friend circles, or avoiding particular websites altogether." Id. at 2144-45.