**In re Honorable Michelle SLAUGHTER, Presiding Judge of the 405th Judicial District Court, Galveston County, Texas.**

No. 15–0001.

Special Court of Review
Appointed by the Supreme Court.

Sept. 30, 2015.

## OPINION

PER CURIAM.

This Special Court of Review[1] is assigned to conduct a trial de novo of the

1. The Special Court of Review panel consists of Justice Charles A. Kreger of the Ninth Court of Appeals in Beaumont, designated presiding justice; Justice Gina Benavides of the Thirteenth Court of Appeals in Corpus Christi and Edinburg; and Justice John Bai-

State Commission on Judicial Conduct's Public Admonition and Order of Additional Education issued against Respondent, the Honorable Michelle Slaughter, Judge of the 405th Judicial District Court in Galveston, Galveston County, Texas, selected "by lot" and appointed by the Chief Justice of the Texas Supreme Court. *See* Tex. Gov't Code Ann. § 33.034 (West Supp.2014) (providing the procedure for appealing the Commission's sanctions). We note at the outset that the function of the Commission "is not to punish; instead, its purpose is to maintain the honor and dignity of the judiciary and to uphold the administration of justice for the benefit of the citizens of Texas." *In re Lowery*, 999 S.W.2d 639, 648 (Tex.Rev.Trib.1998, pet.denied).

■ Article V of the Texas Constitution states that any judge may be disciplined for:

> willful or persistent violation of rules promulgated by the Supreme Court of Texas; incompetence in performing the duties of the office, willful violation of the Code of Judicial Conduct, or willful or persistent conduct that is clearly inconsistent with the proper performance of his [or her] duties or casts public discredit upon the judiciary or administration of justice.

Tex. Const. art. V, § 1–a(6)(A). The Texas Constitution further provides that after receipt of a written complaint and an investigation, the Commission may, among other things, issue a private or public admonition, warning, reprimand, or requirement that the judge obtain additional training or education. Tex. Const. art. V, § 1–a(6)(A), (8). Upon receipt of notification of any type of sanction, the judge may request a special court of review be appointed by the chief justice of the supreme court to review the action of the Commission. Tex. Gov't Code Ann. § 33.034(b); Tex. Rules Rem'l/Ret. Judg. R. 9(a) (West 2015). The Commission then files a charging document with the allegations of judicial misconduct against the judge. Tex. Gov't Code Ann. § 33.034(d). The special court of review holds a trial de novo and renders its decision by written opinion. *Id.* § 33.034(e), (h). As this review is governed to the extent practicable by the rules of law, evidence, and procedure that apply to the trial of a civil action, the Commission has the burden to prove the charges against a respondent by a preponderance of the evidence. *See id.* § 33.034(f); *In re Hecht*, 213 S.W.3d 547, 560 (Tex.Spec.Ct.Rev.2006); *In re Canales*, 113 S.W.3d 56, 66 (Tex.Rev.Trib.2003, pet.denied); *In re Davis*, 82 S.W.3d 140, 142 (Tex.Spec.Ct.Rev.2002).

In its Charging Document, the Commission charged the Respondent with misconduct for posting certain comments on her Facebook page about an ongoing trial in her court, as well as other matters unrelated to the trial that had occurred in her courtroom. In Charge I, the Commission alleged that:

> Judge Slaughter's decision to use her "Judge Michelle Slaughter" Facebook page as the medium through which to comment publicly and enthusiastically about pending criminal cases was inconsistent with the proper performance of her duties as a judge. By engaging in this conduct, Judge Slaughter used the trappings of judicial office to boost her message and, thereby, cast reasonable doubt upon her impartiality and gave rise to a legitimate concern that she would not be fair or impartial in these or other cases.

Pursuant to this allegation, the Commission alleged that the Respondent willfully

ley of the Eleventh Court of Appeals in Eastland.

violated Canon 3(B)(10) of the Texas Code of Judicial Conduct, and that her willful or persistent conduct was clearly inconsistent with the proper performance of her duties in violation of Article V, Section 1–a(6)(A) of the Texas Constitution.

In Charge II, the Commission alleged that "Judge Slaughter's extrajudicial Facebook activities cast reasonable doubt upon her impartiality and interfered with the proper performance of her duties as a judge in that, as a direct result of her conduct, Judge Slaughter was ordered to be removed from presiding over a criminal case...." Her removal ultimately led to a subsequent judge granting a mistrial in the case. Under this charge, the Commission alleged that Respondent's conduct constituted willful violations of Canon 4(A) of the Texas Code of Judicial Conduct, and willful or persistent conduct that is clearly inconsistent with the proper performance of her duties in violation of the standards set forth in Article V, Section 1–a(6)(A) of the Texas Constitution.

Finally, in Charge III, the Commission alleged that by engaging in the extrajudicial Facebook activity and by "disregarding her own admonition to jurors about the use of social media during the trial, Judge Slaughter failed to uphold her duty to promote and maintain public confidence in the integrity, impartiality, and independence of the judiciary." The Commission alleged the Respondent's conduct "became the focus of criticism due to the attendant media attention" and "cast public discredit upon the judiciary or administration of justice" in violation of the standards set forth in Article V, Section 1–a(6)(A) of the Texas Constitution.

The Respondent, in both her written responses to the Commission's allegations and her testimony at trial, asserted that her social media postings did not violate the Texas Code of Judicial Conduct of the Texas constitution. In the alternative, she asserted that if her conduct was found to be in violation of the Texas Code of Judicial Conduct, then the Code abridges her freedom of speech guaranteed by the First Amendment to the United States Constitution.

We conclude the Commission has failed to meet its burden of proving the Respondent violated the Canons of Judicial Conduct or Article V, Section 1–a(6)(A) of the Texas Constitution, we dismiss the Commission's public admonition, and find the Respondent not guilty of all charges.[2]

## I. FACTS

The Respondent maintained a public Facebook page which displayed: (1) a photograph of the Respondent wearing her judicial robe; (2) featured a photograph of the Galveston County Courthouse; and (3) described the Respondent as a "public figure" and as "Judge of the 405th Judicial District Court." After her election to the bench, the Respondent was very active in posting comments about matters that were occurring in her court and in utilizing her Facebook page as a means to educate the public about her court.

On April 28, 2014, a high profile, criminal jury trial was scheduled to begin in the Respondent's court. The case involved a man charged with unlawful restraint of a child for allegedly keeping a nine-year-old boy in a six-foot by eight-foot wooden enclosure inside the family home. The case became known in the media as "the Boy in the Box" case.

---

2. Because we conclude the Respondent did not violate the Canons of Judicial Conduct or the Texas Constitution, we do not address the constitutional question. *See Hecht,* 213 S.W.3d at 551–52.

A couple of days before the trial was set to begin, the Respondent posted the following on her Facebook page,

> We have a big criminal trial starting Monday! Jury selection Monday and opening statements Tues. morning.

The following day, in response to the above-described post, a person posted the following comment on the Respondent's Facebook page,

> One of my favorite Clint Eastwood movies is 'Hang 'Em High,' jus sayin your honor ...

After the jury was seated in the case, the Respondent provided the jurors with oral instructions regarding their conduct during the trial. Specifically, the Respondent admonished the jury regarding their use of social media, including Facebook, and their prohibition of accessing any news stories related to the trial. The Respondent expressly told the jurors the following:

> During the trial of the case, as I mentioned before, you cannot talk to anyone. So make sure that you don't talk to anyone. Again, this is by any means of communication. So no texting, e-mailing, talking person to person or on the phone or Facebook. Any of that is absolutely forbidden.

In addition, the Respondent provided written instructions to the jury that included the following admonition:

> Do not make any investigation about the facts of this case.... All evidence must be presented in open court so that each side may question the witnesses and make proper objection. This avoids a trial based upon secret evidence. These rules apply to jurors the same as they apply to the parties and to me (the Respondent).

On April 28, 2014, the defendant in the criminal case elected to have the Respondent determine his punishment in the event of his conviction. The following day, the Respondent posted the following separate comments on her Facebook page:

> Opening statements this morning at 9:30 am in the trial called by the press "the boy in a box" case.

> After we finished Day 1 of the case called the "Boy in the Box" case, trustees from the jail came in and assembled the actual 6' × 8' "box" inside the courtroom!

> This is the case currently in the 405th!

In the third post listed above, the Respondent included a link to a *Reuters* article entitled "Texas father on trial for putting son in box as punishment."

On the third day of trial, defense counsel in the criminal case filed a motion to recuse the Respondent and a motion for mistrial based on the Respondent's Facebook activities. A visiting judge assigned to hear the motion to recuse granted the motion and removed the Respondent from the case. The case was transferred to another court and that judge granted the defendant's motion for mistrial, causing the case to be retried. In the subsequent trial, the defendant was acquitted of the charges.

After the initial complaint was filed, the Commission examined all of the Respondent's Facebook postings and found other postings it believed improper. On February 5, 2014, the Respondent posted the following comment on her Facebook page regarding another matter pending in her court:

> We have a jury deliberating on punishment for two counts of possession of child pornography. It is probably one of the most difficult types of cases for jurors (and the judge and anyone else) to sit through because of the evidence they have to see. Bless the jury for their

service and especially bless the poor child victims.

At the time of the post, the jury had heard the evidence on punishment and was deliberating in the case.

On May 13, 2014, the Respondent posted the following Facebook comment regarding another case:

We finished up sentencing today with a very challenging defendant.

The Special Court of Review held a trial de novo on July 20 and 21, 2015. At the hearing, to prove its case the Commission called a complaining witness by deposition, called the defense attorney who initially complained of the Respondent's postings and filed the motion to recuse, and called the Respondent.

## II. DISCUSSION

### A. Applicable Law

The Texas Constitution provides that a judge may be disciplined for a willful violation of the Code of Judicial Conduct or for willful or persistent conduct that is clearly inconsistent with the proper performance of his or her duties or that casts public discredit upon the judiciary or administration of justice. Tex. Const. art. V, § 1–a(6)(A). For purposes of Article V, Section 1–a, " 'wilful [sic] or persistent conduct that is clearly inconsistent with the proper performance of a judge's duties' " includes willful violation of a provision of the Code of Judicial Conduct. Tex. Gov't Code Ann. § 33.001(b)(2).

■ "Willful conduct requires a showing of intentional or grossly indifferent misuse of judicial office, involving more than an error of judgment or lack of diligence." *In re Sharp*, No. 12–0003, 480 S.W.3d 829, 833, 2013 WL 979361, at *2 (Tex.Spec.Ct.Rev. Mar. 13, 2013); *Davis*, 82 S.W.3d at 148; *In re Bell*, 894 S.W.2d 119, 126 (Tex.Spec.Ct.Rev.1995). A judge

need not have specifically intended to violate the Code of Judicial Conduct; a willful violation occurs if the judge intended to engage in the conduct for which he or she is disciplined. *Davis*, 82 S.W.3d at 148; *see In re Barr*, 13 S.W.3d 525, 539 (Tex. Rev.Trib.1998).

### B. Social Media and Judicial Conduct

■ "Social media is having a transformative effect on society as it revolutionizes the way we share information and ourselves." John G. Browning, *Symposium: Social Media and the Law: Keynote Address*, 68 U. Miami L.Rev. 353, 359 (2014). In *Youkers v. State*, the Dallas Court of Appeals considered an allegation that a trial judge's designation as a "friend" of a victim's father on Facebook constituted a basis for recusal. *Youkers v. State*, 400 S.W.3d 200, 205 (Tex.App.–Dallas 2013, pet. ref'd). In reaching its decision, the court found that no rule, canon of ethics, or judicial ethics opinion in Texas prohibits Texas judges from using social media outlets like Facebook. *Id.* "The general premise that judges are not prohibited from using social media is consistent with the current standards suggested by the American Bar Association, as well as recent articles addressing the topic." *Id., see, e.g.,* ABA Comm. on Ethics & Prof'l. Responsibility, Formal Op. 462 (2013); Susan Criss, *The Use of Social Media by Judges*, 60 The Advoc. 18 (2012); Gena Slaughter & John G. Browning, *Social Networking Dos and Don'ts for Lawyers and Judges*, 73 Tex. B.J. 192 (2010). However, the Dallas Court of Appeals warned that while the use of social media websites " 'can benefit judges in both their personal and professional lives,' the use presents concerns unique to the role of the judiciary in our justice system" because "an independent and honorable judiciary is indispensable to justice in our society[,]" and,

"[t]hus, judges must be mindful of their responsibilities under applicable judicial codes of conduct." *Youkers*, 400 S.W.3d at 205 (internal citations omitted). "While the technology involved may be newer, at their core, social networking sites are simply platforms for communication and social interaction. Judges have had to contend with the ethical risks, such as the appearance of impropriety posed by other forms of social interaction for decades, if not centuries." John G. Browning, *Why Can't We Be Friends? Judges' Use of Social Media,* 68 U. Miami L.Rev. 487, 490 (2014). "Existing rules of judicial conduct are more than sufficient to provide guidance when it comes to judges' use of social media, once one recognizes that communications and interaction via social media are no different in their implications than more traditional forms of communication." *Id.* Thus, our analysis of the allegations of misconduct alleged against the Respondent should not change simply because the communication occurred online rather than offline. *See Youkers,* 400 S.W.3d at 206. Our analysis, therefore, should focus on the substance of the comments rather than the vehicle by which they were disseminated.

## C. Analysis

### 1. Charge I

■ At least two attorneys involved in the pending criminal case complained to the Commission about the Respondent's comments on Facebook, which were about the pending trial. They complained that the Respondent's actions violated the provision of Canon 2 of the Code of Judicial Conduct requiring that a judge "should act at all times in a manner that promotes public confidence in the integrity and im-

partiality of the judiciary." Tex.Code Jud. Conduct, Canon 2(A), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. B (West 2013). The evidence supports that the Respondent was motivated by the admonition of the Preamble to the Code of Judicial Conduct for judges to "strive to enhance and maintain confidence in our legal system," as she sought to educate the public of the events occurring in her court. *See* Tex.Code Jud. Conduct, Preamble. However, as noted by John Browning, a recognized expert in the field of legal ethics and the use of social media in the legal system, any extrajudicial comment by a judge about a pending case can pose a problem.

■ The Commission alleges in Charge I that the Respondent's postings violated Canon 3(B)(10) of the Texas Code of Judicial Conduct. This Canon states, in pertinent part:

A judge shall abstain from public comment about a pending or impending proceeding which may come before the judge's court in a manner which suggests to a reasonable person the judge's probable decision on any particular case.

. . . .

This section does not prohibit judges from making public statements in the course of their official duties or from explaining for public information the procedures of the court.

Tex.Code Jud. Conduct, Canon 3(B)(10). We note at the outset that Canon 3(B)(10) does not constitute a complete prohibition against a judge ever commenting about a pending proceeding.[3] Instead, the Canon only prohibits a comment "which suggests to a reasonable person the judge's probable decision on any particular case." In

---

**3.** Canon 3(B)(10) also applies to "impending" proceedings "which may come before the judge's court." Since this case only involves a "pending" proceeding, we only will omit further reference to "impending" proceedings.

this regard, Canon 4(A) of the Texas Code of Judicial Conduct states that, "A judge shall conduct all of the judge's extrajudicial activities so that they do not: (1) cast reasonable doubt on the judge's capacity to act impartially as a judge; or (2) interfere with the proper performance of judicial duties." Tex.Code Jud. Conduct, Canon 4(A).[4]

The first comment by the Respondent stated, in part, "We have a big criminal trial starting Monday!" The Commission criticized the Respondent's use of the adjective "big" and the exclamation point, indicating that she was attempting to sensationalize the matter before her court for self-aggrandizement. Defense counsel in the underlying criminal trial testified that the comment raised concerns that because the Respondent felt the case was a "big" case, she might be unduly influenced by public opinion and thus, the comment cast doubt upon her impartiality. However, defense counsel testified that while he may not have agreed with all of the Respondent's rulings in the case, he never observed any action or ruling that he felt was biased for or against either party. The only other witness critical of the Respondent's statement was the attorney ad litem for the child in the same underlying criminal trial, who actively sought prosecution of the criminal defendant stepparent. She testified that the Respondent's comment could have been interpreted by some as indicating that the Respondent was biased and favored the prosecution.

In her defense, the Respondent presented testimony from Renee Knake, a law professor from Michigan State University College of Law and a published author in the field of legal ethics and judicial ethics; John Browning, a lawyer and published

authority regarding the legal and judicial ethics surrounding the use of social media; the Honorable Lonnie Cox, Judge of the 56th Judicial District Court of Galveston County, Texas; and the Honorable Amy Clark Meachum, Judge of the 201st District Court of Travis County, Texas.

As indicated above, after the trial of the underlying criminal case had begun, the Respondent posted two additional comments about the case on her Facebook page wherein she referred to the case as "the boy in a box case."

Counsel for the criminal defendant testified that it was part of his defensive strategy to avoid calling the structure a "box" in front of the jury to avoid any prejudice from that connotation. Defense counsel complained that he felt the comment regarding the "box" violated Canon 3, suggesting to a reasonable person the Respondent's probable decision on her ruling on any objection to having the "box" presented before the jury. In a pretrial hearing, defense counsel argued a motion *in limine* to limit the use of the term "box" to describe the wooden enclosure at trial, arguing that the term was prejudicial to the defendant and misstated the evidence. The Respondent denied defense counsel's motion, stating, "[c]alling it a wooden enclosure—certainly the press has referred to it as 'The Boy in the Box' case, that sort of thing. So I don't think that there's going to be prejudice. The jury can make up their own minds as to what they believe that is." The record shows that both the prosecutor and defense counsel sometimes referred to the structure in voir dire and opening statements as the "box" even before the Respondent posted her comments on Facebook.

4. As noted previously, the Commission alleges in Charge II that the Respondent/s postings

violated Canon 4(A).

Before the second comment referencing the box was posted by the Respondent, a videotape of the structure had been admitted into evidence and was viewed by the jury. Further, counsel for all parties met with the Respondent in open court and outside the presence of the jury to discuss the agreed-upon procedure for constructing the structure in the courtroom. In response to a question posed by the Respondent, defense counsel affirmatively stated on the record that he had no objection to proceeding in the agreed-upon manner of constructing the "box" in the courtroom. The record shows that the only objection lodged by defense counsel to the "box" during the first trial was that it was cumulative, which was overruled.

As indicated above, the Commission also considered comments the Respondent made regarding two other cases pending in her court. In the first case, she posted a comment that indicated that a jury was deliberating on punishment for two counts of possession of child pornography. The comment expressed the Respondent's opinion that that type of case was probably one of the most difficult "for jurors (and the judge and anyone else) to sit through because of the evidence they have to see." The comment concluded by thanking the jurors for their service but was worded as "[b]less the jury for their service and especially bless the poor child victims." With regard to yet another case, she posted a comment describing the defendant in the case as being "very challenging[.]"

The Commission relied solely on the Respondent's testimony to support its position regarding these two additional comments. In her testimony, the Respondent explained that her comments were meant to express her appreciation to the jurors for their service in a particularly difficult case and to describe her day with a particularly challenging defendant who spat upon the judge and used profanity in the courtroom. The Respondent testified that she made a campaign promise to be transparent and to keep the public informed of the cases being tried in her court. She testified that she made the Facebook comments in order to keep that promise to her constituents. Reelection in the future may also have motivated the Respondent in part, but that goal is not necessarily inconsistent with the proper performance of her duties as a judge. The Respondent presented expert witness testimony that her Facebook comments did not violate the Canons of the Code of Judicial Conduct, did not amount to willful or persistent conduct clearly inconsistent with the proper performance of the judge's duties, and did not cast public discredit upon the judiciary or administration of justice.

In *Sharp* and *Davis*, two cases where the judges' conduct was found to be willful or persistent, the judges' actions were shown to have been an intentional or grossly indifferent misuse of judicial office, involving more than an error of judgment. *See Sharp*, 480 S.W.3d at 834–37, 838–39, 2013 WL 979361, at *3–5, *7; *Davis*, 82 S.W.3d at 148. Here, the testimony from the Respondent was that she read and considered the Canons before making her comments on social media. However, we find troublesome that these comments go beyond mere factual statements of events occurring in the courtroom and add the judge's subjective interpretation of these events at or near the time of their occurrence. Regardless, we find such comments, at most, showed what amounted to an error in judgment by posting facts from a pending case in her court.

After considering all of the evidence presented in the trial de novo with regard to Charge I, the Special Court of Review finds that the credible evidence overwhelmingly preponderates in favor of a

finding that Respondent did not violate Canons 3(B)(10) and 4(A) of the Code of Judicial Conduct or Article V, Section 1–a(6)(A) of the Texas Constitution. The Commission did not present evidence that the Respondent's extrajudicial statements would suggest to a reasonable person the judge's probable decision on any particular case or that would cause reasonable doubt on the judge's capacity to act impartially as a judge. Further, there was no evidence or legally insufficient evidence that the Respondent's comments rose to the level of willful or persistent conduct clearly inconsistent with the proper performance of the Respondent's duties as a judge. The Commission presented no evidence that the Respondent's actions amounted to an intentional or grossly indifferent misuse of her office.

While we have held that such communications did not rise to the level of communicating to others how the judge might have ruled in the case, the timing of the posts is troublesome for the judiciary. A judge should never reveal his or her thought processes in making any judgment. Even calling attention to certain facts or evidence found significant enough for the judge to comment on in a pending matter before any decision has been rendered may tend to give the public the impression that they are seeing into the deliberation process of the judge.

Additionally, extrajudicial comments made by a judge about a pending proceeding will likely invite scrutiny, as it did in this case. While the Respondent's comments were ultimately proven to not be suggestive of her probable decision on any particular case, the process for reaching this conclusion required the expenditure of a great deal of time, energy, and expense. And as this case illustrates, comments made by judges about pending proceedings create the very real possibility of a recusal (or even a mistrial) and may detract from the public trust and confidence in the administration of justice.

## 2. Charge II

■ The Commission additionally argues that implicitly, the Respondent's extrajudicial Facebook activities resulted in her recusal, as her postings were made the sole basis for the motion seeking her recusal. The Commission asserts that that fact alone is sufficient evidence that the Respondent violated the Canons of the Code of Judicial Conduct as the Respondent's extrajudicial Facebook comments interfered with the proper performance of her judicial duties as proscribed by Canon 4(A).

■ Recusal motions—even in the criminal context—are governed by Rule 18a and Rule 18b of the Texas Rules of Civil Procedure. *See* Tex.R. Civ. P. 18a, 18b. When a motion to recuse is filed, the trial judge is not a party to the motion and therefore, is not represented in the hearing and is not allowed an opportunity to appear and defend against the motion. *See* Tex.R. Civ. P. 18a. The visiting administrative judge who heard and considered the motion to recuse in the criminal case did not testify in the trial de novo before the Special Court of Review, and there is no evidence of the factors or grounds he relied upon to recuse the Respondent from the underlying criminal trial. Ethical violations alone are not necessarily grounds for recusal. *See Gaal v. State*, 332 S.W.3d 448, 454–55 (Tex.Crim. App.2011); *Rosas v. State*, 76 S.W.3d 771, 775 (Tex.App.–Houston [1st Dist.] 2002, no pet.).

Extrajudicial statements by a trial judge have been the subject of motions to recuse in other cases. In *Simpson v. State*, the Houston Court of Appeals held that violations of the Code of Judicial Conduct will

not support recusal without further evidence of bias. No. 01–12–00380–CR, 2014 WL 2767126, at *10 (Tex.App.–Houston [1st Dist.] June 17, 2014, pet. ref'd) (mem. op., not designated for publication). In that case, the court acknowledged that judges have their own personal opinions, but unless the movant can establish judicial bias, it is presumed that a judge will base her judgment upon the facts as they are developed at the trial. *Id.*

Sometimes the judge may need to recuse herself, or be recused, even though she has no actual bias and would do her very best to weigh the scales of justice equally between contending parties. *See, e.g., Keene Corp. v. Rogers,* 863 S.W.2d 168, 180 (Tex.App.–Texarkana 1993, no writ). It is recognized that people who have not served on the bench are often all too willing to indulge suspicions and doubts concerning the integrity of judges. *Id.* The judiciary must strive to not only give all parties a fair trial, but also maintain a high level of public trust and confidence. *See Indem. Ins. Co. v. McGee,* 163 Tex. 412, 356 S.W.2d 666, 668 (1962). We are not charged with reviewing the administrative judge's decision to recuse the Respondent, but only whether the Respondent's actions violated the Code of Judicial Conduct. Each involves implementation of separate and distinct standards of review.

Without further evidence, the panel finds the Commission has not met its burden to prove by a preponderance of the evidence any violation of Canon 4(A) arising solely from the Respondent's recusal. Accordingly, we find the Respondent not guilty of any violation of Canon 4(A) for being recused from a case pending in her court.

### 3. Charge III

█ In Charge III, the Commission criticizes the Respondent for disregarding her own admonition to the jury about the use of social media during a trial. As such, the Commission charged that the Respondent failed to uphold her duty to promote and maintain public confidence in the integrity, impartiality, and independence of the judiciary, in violation of Article V, Section 1–a(6)(A) of the Texas Constitution, by posting a link on social media to an online news article about the pending trial, which may have contained extraneous facts.

In the underlying criminal trial, the Respondent provided the jury with two admonitions concerning the use of social media. The Respondent provided the jury with a written admonition concerning their *receipt* of information during the trial. She admonished the jury that they were to guard themselves from receiving any evidence except that which was introduced in the trial of the cause. This admonition prohibited the jurors from reading any newspapers, watching the local news, or engaging in social media where they may come in contact with outside influences. The Respondent concluded this written admonition about the receipt of extraneous information about the case with the following statement: "These rules apply to jurors the same as they apply to the parties and to me."

The Respondent additionally provided the jury with an oral admonition concerning their *disclosure* of information about the case during the trial. Specifically, she admonished the jury as follows:

During the trial of the case, as I mentioned before, you cannot talk to anyone. So make sure that you don't talk to anyone. Again, this is by any means of communication. So no texting, e-mailing, talking person to person or on the phone or Facebook. Any of that is absolutely forbidden.

This oral admonition concerning the disclosure of information about the case by the jury was not accompanied by a statement to the effect that the same rules applied to the parties or the judge. In an apparent disregard of her own admonitions to the jurors concerning their receipt of information, the Respondent posted a link to a *Reuters* article describing the trial.

The Court of Criminal Appeals has held that a trial judge's refusal to poll the jury mid-trial to determine whether the jurors had been influenced by a newspaper article was proper when the trial judge repeatedly admonished the jury not to read any newspaper articles concerning the case. *See Powell v. State,* 898 S.W.2d 821, 828 (Tex.Crim.App.1994). In *Powell,* the appellant argued that the trial court's refusal to poll the jury was error. *Id.* The Court of Criminal Appeals held that the trial judge's refusal to poll the jury was correct after the trial judge reiterated its admonishments not to read any newspapers. *Id.*

 In *Powell,* the trial judge was necessarily exposed to the substance of the newspaper article because the defendant brought the article to the judge's attention in order to request the judge to poll the jury to see if any improper influence had been brought to bear on the jury members. *Id.* Judges, as gatekeepers of the evidence that is admitted before the jury, are routinely exposed to inadmissible evidence. As the Texas Court of Criminal Appeals pointed out in *Layton v. State,* the rules of evidence place the "trial judge in the role of a 'gatekeeper,' whose responsibility it is to weed out inadmissible evidence...." 280 S.W.3d 235, 241 (Tex.Crim.App.2009). The rules recognize that certain evidence "has the ability to mislead a jury that is not properly equipped to judge the probative force of the evidence[,]" and thus, it is the role of the judge to determine whether the evidence offered is relevant and reliable for a jury to consider. *Id.* Implicit in that acknowledged role is that judges are properly equipped to judge the probative force of any evidence and separate that from any decision that must be rendered in cases that come before them.

Here, there was no evidence to suggest that the Respondent used extraneous evidence in any improper manner to the prejudice of either party before her. In this regard, there is no evidence that the *Reuters* article contained any extraneous information that was not already made known to the Respondent in her capacity as the judge presiding over the defendant's trial. Further, the Respondent took the extra step of polling the jury during the trial and every member of the jury panel answered affirmatively that he or she had not seen or been exposed to anyone's social media posts regarding the trial. No evidence presented by the Commission rises to the level of willful or persistent conduct as required by the Texas Constitution.

We hold the preponderance of the evidence shows no constitutional violation by the Respondent by her posting a link to the *Reuters* article on social media during the pendency of the trial in her court. Accordingly, we find the Respondent not guilty of violating Article V, Section 1–a(6)(A) of the Texas Constitution for posting a public comment referring to media reports of a trial pending in her court after having admonished the jury to refrain from viewing any media coverage of the trial while they were serving on the jury panel.

 Finally, as noted previously, the "Factual Allegations" of the Commission's Charging Document cites the "Hang'Em High" comment that a person posted on the Respondent's Facebook page. This comment is not specifically referenced in

any of the three Charges presented by the Commission.

The evidence elicited at the trial de novo revealed that the comment was unsolicited by the Respondent and was removed by the Respondent as soon as it was brought to her attention. Our review of the Canons does not indicate any express requirement for judges to patrol their social media websites to either delete or disavow any comments made by others. We are reluctant to impose a requirement of this type in the absence of an express requirement in the Canons. Furthermore, we find that a reasonable person would not believe that a comment of this type made by a third party would cause a judge to become biased or partial for or against one party or that a judge-host of the page is condoning the sentiments of any such unsolicited comment from the mere fact that it is posted on the judge's wall. However, judges should be cautious and exercise discretion to avoid posting factual statements regarding pending proceedings that may invite disparaging comments about the parties, the judiciary, or the administration of justice.

We conclude the Commission has failed to meet its burden of proving by a preponderance of the evidence that the Respondent, Judge Slaughter, violated the Canons of Judicial Conduct or Article V, Section 1–a(6)(A) of the Texas Constitution when an unsolicited .comment was posted on her social media website.

Accordingly, we find the Respondent not guilty of all charges and we dismiss the Commission's public admonition. *See* Tex. Rules Rem'l/Ret. Judg. R. 9(d).

**CHARGES DISMISSED.**