**Affirmed and Opinion Filed March 25, 2021.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-01504-CV

## KATRINA MCPHERSON, Appellant
## V.
## MELISSA LOPEZ, Appellee

**On Appeal from the County Court at Law No. 5**
**Dallas County, Texas**
**Trial Court Cause No. CC-18-05725-E**

## MEMORANDUM OPINION

Before Justices Schenck, Osborne, and Partida-Kipness
Opinion by Justice Partida-Kipness

This case involves a dispute over payment for a wedding gown. Katrina
McPherson appeals the county court at law's final judgment following trial de novo
of her appeal from the justice court. On appeal, McPherson argues the trial court's[1]
judgment should be reversed and the case remanded for new trial because appellee
Melissa Lopez failed to serve McPherson with her counterclaim in the justice court,
the evidence was legally and factually insufficient to support the judgment, and the

---

[1] Because an appeal from the Justice Court is de novo, we will refer to the County Court at Law No. 5
as the trial court. *See* TEX. R. CIV. P. 506.3.

judgment is the result of judicial bias. Finding no merit in these issues, we affirm the judgment.

## BACKGROUND

Lopez owns Bella Brides, a bridal salon in Cedar Hill, Texas, that sells bridal, prom, and special occasion gowns. On November 12, 2017, McPherson and her daughter, Kiambria Temple, looked at bridal gowns at Lopez's store. Temple chose a gown to purchase. Lopez informed McPherson and Temple that the dress was a custom gown that had to be ordered that day to arrive in time for Temple's August 2018 wedding. Lopez took Temple's measurements and prepared a special-order invoice, which set out the prices for the items ordered, a sales agreement, Temple's measurements, and a breakdown of three payments made by McPherson that day. The invoice totaled $4,145.98, which included sales tax, and showed payments of $2,476.00, leaving $1,669.98 due.

Four days later, McPherson and Temple added a custom veil and custom headpiece to the order. A new special-order invoice was generated and signed by McPherson. That invoice, like the original, set out the prices for all items ordered, the payments made to date, Temple's measurements, and the sales agreement. The price for the custom veil and custom headpiece was $850.00. McPherson paid $550.00 as a down payment on those items when she placed the order. The total price for all items ordered plus tax was $5,066.11. After subtracting the down payments, the balance due was $2,040.11. McPherson made two additional

payments of $510.00 each, first on December 14, 2017, and then on January 25, 2018. Following those payments, the balance due was $1,020.11.

According to Lopez, the sales agreement required McPherson to make monthly payments until the balance was paid in full. McPherson disagrees. She maintains the agreement was to pay 60% down and pay the balance when the gown was available for pick-up at the salon. McPherson testified that she only made the December and January payments because Lopez began calling McPherson asking for payment to ensure the designer continued making the gown. When McPherson did not make a payment in February 2018, Lopez contacted McPherson multiple times for payment. McPherson told the trial court that she sent Lopez a cease-and-desist letter on March 20, 2018, because Lopez's emails had become harassing. She also sent Lopez three money orders of $1.00 each.

Lopez notified McPherson and Temple in a March 29, 2018 letter that they were in breach of contract "due to non-payment and failure to maintain payment terms." Lopez demanded payment of the balance due of $1,020.11 by April 2, 2018, to avoid cancellation of the order. Shortly thereafter, McPherson filed a complaint against Bella Brides with the Better Business Bureau (BBB).

On April 18, 2018, after receiving the custom veil and custom headpiece, Lopez sent those items to Temple because McPherson's prior payments were sufficient to pay the balance on those items in full. Temple returned the custom veil and custom headpiece to Lopez on April 22, 2018. McPherson testified that they

returned those items because the veil and headpiece "were not the items we paid for, so we returned those items." McPherson also told the trial court that she included a demand letter with the veil and headpiece in which she demanded that Lopez either produce the dress or refund their money.

The sales agreement signed by McPherson provides in part that "Orders not picked up within 72 hours of notification are subject to a daily storage fee at a rate of $10.00 per day." Based on that provision, Lopez notified McPherson and Temple that she would begin charging storage fees for the veil and headpiece. Lopez testified that she also notified McPherson on multiple occasions that the gown would be available for pickup May 15, 2018, but McPherson made no effort to pay the balance or pick up the gown. McPherson bought a second gown on May 7, 2018, from another vendor.

In a June 13, 2018 letter, Lopez informed Temple and McPherson that the total past due balance was $1,850.11, which included a past due balance on the custom gown order of $1,020.11, storage fees for the custom gown of $300.00, and storage fees for the custom veil and headpiece of $530.00. The storage fees for the gown were calculated at $10 per day for storage beginning May 15, 2018, which was the date on which the gown was available for pick-up from Bella Brides. The storage fees for the veil and headpiece were calculated at $10 per day for storage beginning April 22, 2018, which was the date on which Temple returned those items to Bella Brides.

On July 11, 2018, McPherson and Temple sued Lopez and Bella Brides in justice court. They sought either reimbursement of the $4,046.00 paid to Lopez or delivery of the gown and headpiece. Lopez filed a counterclaim seeking damages of $5,150.11. On September 20, 2018, Judge Thomas G. Jones, Justice of the Peace, Precinct 1, Place 1, in Dallas County rendered judgment for Lopez on her counterclaim for $1,645.00, costs of court, and interest and rendered a take nothing judgment against McPherson and Temple. McPherson timely filed an appeal bond on October 11, 2018, and appealed the judgment to County Court at Law No. 5 in Dallas County for trial de novo. *See* TEX. R. CIV. P. 506.1.

McPherson and Lopez appeared pro se at the trial de novo on December 13, 2018, and testified on their own behalf. The trial court rendered judgment that Lopez take nothing from Temple but that she recover the $1,021.11 balance due on the wedding gown, storage fees of $1,500.00, court costs, and postjudgment interest from McPherson. The judgment awarded possession of the wedding gown to McPherson provided she pay the judgment in full by January 15, 2019, otherwise to Lopez.

McPherson requested findings of fact and conclusions of law and filed a motion for new trial. The trial court denied the motion for new trial following a hearing on the motion at which Lopez did not appear. The trial court issued findings of fact and conclusions of law as summarized below:

- McPherson contracted with Lopez for a custom wedding gown for Temple's wedding

- McPherson paid some but not all of the money owed under the contract.

- At the time of trial and allowing for all offsets, McPherson owed $1,021.11.

- McPherson failed to pay the full purchase price without excuse and was, therefore, in breach of contract.

- Lopez stood ready, willing, and able to perform all her material obligations under the contract.

- Because McPherson failed to complete payment under the terms of the contract, Lopez has incurred and continues to incur storage fees "well in excess of the $1500 awarded by the court."

- Lopez made the gown available for inspection the day of trial, and McPherson did not have any complaints with the quality of craftsmanship and did not argue that the finished gown failed to conform with the gown she had purchased.

- The gown is of minimal value to either party. Because the gown is a custom gown that underwent some alterations to fit Temple, the value is minimal to Lopez. Temple is now married, so the gown has little value to McPherson.

Lopez requested amended findings of fact and conclusion of law. The trial court did not issue additional findings or conclusions. This appeal followed.

### ANALYSIS

McPherson lists eight issues in the "Issues Presented" portion of her brief. She discusses those issues under three broad categories. We will address each issue in turn using the three broad categories employed by McPherson.

## I.  Issue One – Service of Counterclaim

In her first issue, McPherson contends the judgment should be reversed and the case remanded for a new trial because Lopez did not serve McPherson with her counterclaim in the justice court. A party waives a complaint regarding service of process if she makes a general appearance. *Phillips v. Dallas Cty. Child Protective Servs. Unit*, 197 S.W.3d 862, 865 (Tex. App.—Dallas 2006, pet. denied). Here, McPherson made a general appearance by appearing and participating in the justice court proceedings and the de novo trial in the county court at law and by filing an answer to Lopez's counterclaim. *See* TEX. R. CIV. P. 120, 121; *see also Phillips*, 197 S.W.3d at 865. By making a general appearance and participating in trial, McPherson waived any complaint regarding service of process. We overrule her first issue.

## II.  Issue Two – Sufficiency of the Evidence

McPherson next argues that the trial court "erred and abused its discretion" by awarding final judgment for Lopez and "did not have sufficient evidence to support his ruling." Within that argument, McPherson presents several reasons why she contends the judgment should be reversed. Those reasons correspond to Issues Two, Three, Four, Five, Seven, and Eight detailed in the "Issues Presented" portion of her brief. Specifically, McPherson argues the trial court erred and abused its discretion because:

- The trial court did not cancel the contract even though evidence showed Lopez breached the contract and engaged in deceitful

–7–

and deceptive practices under sections 17.41 and 17.46 of the Texas Deceptive Trade Practices Act (DTPA). (Issue Two);

- The evidence was factually insufficient to support the judgment pursuant to section 2-310 of the Uniform Commercial Code (UCC), which provides that the balance was due at the time of product delivery and Lopez's demand for payment before that time violated the UCC. (Issue Three);

- Lopez violated section 2-302 of the UCC and acted unconscionably under section 2-310 of the UCC by cancelling the order before the dress was ready and then continuing with the order without telling McPherson. (Issue Four);

- The trial court refused to provide McPherson a credit for items returned to Lopez as required by sections 2-302, 2-307, 2-308, 2-513, and 2-602 of the UCC. (Issue Five);

- The trial court omitted evidence and failed to review evidence refuting that the dress ordered was custom, and refuting existence of payment terms. (Issue Seven); and

- Lopez did not comply with sections 17.41 and 17.46 of the DTPA. (Issue Eight).

## A. Failure to preserve issues for appellate review

To preserve an issue for appeal, a party must make a timely, specific objection or motion in the trial court that states the grounds for the desired ruling with sufficient specificity to make the trial court aware of the complaint. TEX. R. APP. P. 33.1(a); *Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex. 1993); *In re E.G.L.*, 378 S.W.3d 542, 548 (Tex. App.—Dallas 2012, pet. denied), cert. denied, 571 U.S. 883 (2013). Complaints and arguments on appeal must correspond with the complaint made at the trial court level. *Knapp v. Wilson N. Jones Mem'l Hosp.*, 281 S.W.3d 163, 170 (Tex. App.—Dallas 2009, no pet.). "[E]ven the right to have a question of

law reviewed by an appellate court may be waived if it is not first presented to the trial court for consideration." *City of Amarillo v. Barnes*, No. 07-97-0217-CV, 1998 WL 609765, at *1 (Tex. App.—Amarillo Sept. 14, 1998, no pet.) (op. on reh'g).

Here, McPherson raises the arguments in Issues Two, Three, Four, Seven, and Eight for the first time on appeal. As such, she has waived those issues to the extent they do not merely challenge the legal or factual sufficiency of the evidence. We, therefore, overrule Issues Two, Three, Four, Seven, and Eight.

### B. McPherson's request for a credit for the veil and headpiece

During trial and in her motion for new trial, McPherson did, however, raise part of the argument she makes in Issue Five on appeal. During trial, McPherson requested a credit for money she paid on the veil and headpiece because she returned those to Lopez. In her motion for new trial, McPherson asserted that the judgment should be reversed because the trial court refused to provide her the credit requested. McPherson maintained that she returned the veil and headpiece because they were not the custom items ordered and she was, therefore, owed a credit when Lopez did not correct the order. On appeal, she adds that Lopez was required by sections 2-302, 2-307, 2-308, 2-513, and 2-602 of the Uniform Commercial Code (UCC) to give McPherson a credit for returning those items. We overrule her UCC-specific arguments regarding her request for a credit because she raises those arguments for the first time on appeal. *See* TEX. R. APP. P. 33.1(a). We do, however, address her general argument that a new trial is warranted.

We review the trial court's denial of McPherson's motion for new trial for abuse of discretion. *Dugan v. Compass Bank*, 129 S.W.3d 579, 582 (Tex. App.—Dallas 2003, no pet.) (citing *Champion Int'l Corp. v. Twelfth Court of Appeals*, 762 S.W.2d 898, 899 (Tex. 1988) (orig. proceeding)). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner or acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). McPherson contends that this case should be remanded for a new trial because the trial court failed to give her a credit for the returned veil and headpiece. We disagree.

McPherson's conclusory trial testimony is the only evidence that the veil and headpiece were returned because they were not the custom pieces she ordered. The trial court, as factfinder, was the sole judge of the credibility of the witnesses. *Sw. Bell Media, Inc. v. Lyles*, 825 S.W.2d 488, 493 (Tex. App.—Houston [1st Dist.] 1992, writ denied). The court weighed McPherson's testimony with Lopez's testimony that McPherson provided no reason for returning the veil and headpiece and that Lopez notified McPherson and Temple via certified mail that they would be charged storage fees pursuant to the sales agreement because they returned the items to the store. The sales agreement, which stated that McPherson would be charged storage fees for items not picked up within 72 hours of notification from Lopez, and the June 13, 2018 letter to McPherson, which informed her of those fees, were also before the court. Further, the storage fees incurred by Lopez for the gown

–10–

alone exceeded any purported credit owed to McPherson. Under this record, we conclude the trial court did not abuse its discretion by denying McPherson's motion for new trial as to her request for a credit for the veil and headpiece. Accordingly, we overrule McPherson's arguments requesting a credit.

### C.   Sufficiency challenge

In a civil bench trial, a party is permitted to raise a complaint regarding the legal or factual sufficiency of the evidence for the first time on appeal. TEX. R. APP. P. 33.1(d) ("In a civil nonjury case, a complaint regarding the legal or factual insufficiency of the evidence—including a complaint that the damages found by the court are excessive or inadequate, as distinguished from a complaint that the trial court erred in refusing to amend a fact finding or to make an additional finding of fact—may be made for the first time on appeal in the complaining party's brief."). McPherson's briefing under her second, broad heading includes general arguments explaining why McPherson believes the trial court misapplied the evidence and reached an improper judgment. We construe these complaints as challenges to the legal and factual sufficiency of the evidence to support the judgment and the trial court's findings of fact and conclusions of law.

### 1.   Standard of review

In an appeal from a bench trial, we review legal and factually sufficiency issues under the same standards that are applied to the review of a jury's verdict. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). Where, as here,

the trial court issued findings of fact and conclusions of law, the trial court's findings of fact have the same weight as a jury verdict. *Merry Homes, Inc. v. Luu*, 312 S.W.3d 938, 943 (Tex. App.—Houston [1st Dist.] 2010, no pet.). When a reporter's record has been filed, findings of fact are not conclusive and are binding only if they are supported by the evidence. *HTS Servs., Inc. v. Hailwood Realty Partners, L.P.*, 190 S.W.3d 108, 111 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

In reviewing a factual sufficiency complaint, we must consider, examine, and weigh the entire record, considering both the evidence in favor of, and contrary to, the challenged findings. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). We will set aside the disputed finding only if it is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust. *Id.* at 407.

We review a trial court's conclusions of law de novo. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Although a trial court's conclusions of law may not be challenged for factual sufficiency, we may review the legal conclusions drawn from the facts to determine whether the conclusions are correct. *Id.* If we determine that a conclusion of law is erroneous, but the trial court nevertheless rendered the proper judgment, the error does not require reversal. *Id.* We will sustain a no-evidence point when

> (1) the record discloses a complete absence of evidence of a vital fact;
> (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence

–12–

offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact.

*Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003) (citing *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1996)).

### 2. Sufficiency review

Here, the trial court determined that McPherson contracted with Lopez for a custom wedding gown for Temple's wedding, paid some but not all of the money owed under the contract, and owed $1,021.11 at the time of trial. The trial court concluded that McPherson breached the contract because she was not excused from paying the full purchase price. The trial court further concluded that Lopez was ready, willing, and able to perform all of her material obligations under the terms of the contract and incurred considerable storage fees in excess of $1,500.00 as a result of McPherson's failure to complete payment.

After considering, examining, and weighing the entire record and considering the evidence in favor of and contrary to the trial court's findings, we conclude the evidence is factually sufficient to support those findings. The trial court had before it the conflicting testimony of McPherson and Lopez and physical evidence that included the signed sales invoices, payment receipts, and correspondence between the parties. As the fact-finder, the trial court judged the credibility of the parties' testimony and weighed the evidence. When the evidence is conflicting, we must presume that the fact-finder resolved the inconsistency in favor of the finding if a

reasonable person could do so. *Anderton v. Green*, 555 S.W.3d 361, 371 (Tex. App.—Dallas 2018, no pet.).

Here, the sales invoices showed the amount due at the time of trial, and neither Lopez nor McPherson denied that the amount due minus down payments was $1,021.11. Indeed, McPherson did not complain of the calculation of the amount owed or dispute the validity of the calculation; rather she complained that Lopez improperly requested monthly payments before the time of delivery. McPherson offered no excuse for her refusal to pick up the gown when it was ready in May 2018, or for her decisions not to pay the remaining balance and to purchase a gown from a different merchant. McPherson did not contend the gown was damaged or deficient in any way. In fact, she did not inspect the gown at all. The sales agreement and Lopez's letter to McPherson in June 2018 explicitly set out the requirement that McPherson pay storage fees at $10.00 per day should she not pick-up ordered items within 72 hours of notice of their availability. Again, McPherson does not deny the existence of that provision in the sales agreement. Nor does she challenge the finding that the storage fees incurred exceed $1,500.00. Rather, she argues that she should not have to pay storage fees because Lopez breached the contract by requiring monthly payments and cancelling the contract before reinstating the contract without notifying McPherson. There is no evidence in the record, however, that Lopez ever cancelled the contract. On the contrary, Lopez merely threatened McPherson with cancellation should McPherson not pay the amount due in full. Under this record,

–14–

we conclude the trial court's findings of McPherson's non-payment without excuse, Lopez's readiness to perform her obligations under the contract, the amount owed at the time of trial, and the amount of storage fees incurred by Lopez are not so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust. *See Ellis*, 971 S.W.2d at 407.

The trial court's conclusions of law included its conclusions that the parties entered a contract, McPherson breached that contract by non-payment of the total due and owing at the time the gown was delivered, and McPherson's failure to pay caused Lopez to incur storage fees in excess of $1,500.00. Reviewing the trial court's conclusions of law de novo, we conclude there was much more than a mere scintilla of evidence to support those conclusions. *See Pitzner*, 106 S.W.3d at 727 ("Anything more than a scintilla of evidence is legally sufficient to support the trial court's finding. . . ."). McPherson signed the sales agreement that showed all items ordered and made down payments on those items but refused to pick up the gown and refused to pay the final amount due. Lopez testified that the gown was ready for pickup on May 15, 2018, and she notified McPherson multiple times of the gown's availability for pick-up. There is no dispute that $1,021.11 remained due and owing at the time of trial, McPherson failed to pick-up the gown, and, thus, Lopez had to store the gown for almost seven months between the time the gown was ready on May 15, 2018, until the December 13, 2018 trial. Under this record, we conclude the evidence was legally sufficient to support the trial court's judgment and its conclusions of law.

Having concluded the evidence was legally and factually sufficient to support the trial court's findings and conclusions, we overrule McPherson's sufficiency challenges.

### III.    Issue Three – Alleged Judicial Bias

In her third issue, McPherson argues that the trial court's judgment was based on "bias and not based on law" because the trial judge did not review the evidence in the record and spoke about his personal experience in purchasing a bridal gown. McPherson provides no evidentiary basis for her opinion that the trial judge did not review the evidence. She simply says there is no way he could have reviewed the evidence before ruling. McPherson's arguments in her brief regarding this issue, however, consist of her rendition of what she believes the evidence showed at trial. Simply put, McPherson disagrees with the trial court's judgment and believes she should have won based on the facts as she sees them.

McPherson's complaint that the trial judge shared his personal experience in buying a wedding gown is based on the following exchange during trial:

> MS. MCPHERSON: So I thought that she was guiding us correctly by telling us, Honey, this is a custom gown, it has to -- she said it has to be ordered on this date in order for it to be back in time for your wedding.
>
> THE COURT: Right.
>
> MS. MCPHERSON: So that was the only reason we actually entered into the agreement is because she said that it had to be ordered that day; with a verbal agreement, that it had to be ordered that day. That's why she got 60 percent down at that time. Because, again, her wedding wasn't until August. I would never order the dress in November if --

THE COURT: That's how long it takes.

MS. MCPHERSON: Well, not necessarily, and I have documents, evidence to prove that as well.

THE COURT: Okay. Well, I've gone through this myself. I can tell you it takes a long time to get --

MS. MCPHERSON: I do understand the process on how it takes but I also understand that in November, for her wedding in August, that dress wasn't a custom made dress, did not have to be ordered at that time. And I have documents to prove it.

THE COURT: All right.

McPherson does not explain why or how these comments show judicial bias in the trial court's judgment. And we conclude they do not.

In the absence of clear proof to the contrary, we presume a trial judge is impartial and unbiased. *Hammack v. Pub. Util. Comm'n of Tex.*, 131 S.W.3d 713, 731 (Tex. App.—Austin 2004, pet. denied) ("Decision makers are presumed fair, honest, and unbiased."); *Munoz v. State*, No. 03-08-00607-CR, 2009 WL 3051479, at *7 (Tex. App.—Austin Sept. 23, 2009, no pet.) (mem. op., not designated for publication) (citing *Roman v. State*, 145 S.W.3d 316, 319 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd)). To warrant reversal for bias, statements by the trial court must demonstrate bias "of such a nature and to such an extent as to deny a defendant due process of law." *Wesbrook v. State*, 29 S.W.3d 103, 121 (Tex. Crim. App. 2001); *Office of Pub. Util. Counsel v. Pub. Util. Comm'n*, 185 S.W.3d 555, 574 (Tex. App.—Austin 2006, pet. denied) ("A decisionmaker exhibits impermissible bias when '[t]he bias . . . come[s] from an extrajudicial source and

–17–

result[s] in an opinion on the merits of the case other than what the judge learned from participating in the case'") (quoting *Rosas v. State*, 76 S.W.3d 771, 774 (Tex. App.—Houston [1st Dist.] 2002, no pet.)). "[J]udicial rulings alone almost never constitute a valid basis for showing the trial court's bias or impartiality, and judicial remarks that are critical, disapproving, or even hostile to a party or counsel do not demonstrate bias—nor do expressions of impatience, annoyance, or even anger." *Spears v. Falcon Pointe Cmty. Homeowner's Ass'n*, No. 03-14-00650-CV, 2016 WL 1756486, at *6 (Tex. App.—Austin Apr. 28, 2016, no pet.) (mem. op.) (first citing *Liteky v. United States*, 510 U.S. 540, 555–56 (1994); then citing *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240 (Tex. 2001); and then citing *Thomas v. Graham Mortg. Corp.*, 408 S.W.3d 581, 595–96 (Tex. App.—Austin 2013, pet. denied)).

Here, McPherson presents no evidence to overcome the presumption that the trial court was unbiased in presiding over her trial. There is no evidence to support her belief that the trial court did not review the evidence to make its decision. And the trial judge's statement that it takes a long time to get a wedding gown does not show bias against McPherson's substantive claims. The trial court determined McPherson agreed to purchase the gown for a certain price and failed to pay the full amount due when the gown was ready for pick-up. The court did not determine whether the agreement required monthly payments or whether Lopez fraudulently induced McPherson into purchasing the dress in November 2017. On the contrary, McPherson conceded at trial that she had never seen the finished gown and could

–18–

not say she was dissatisfied with the gown. As such, McPherson's reasons for ordering the dress in November 2017 and her belief that doing so was unnecessary to have a dress ready for an August 2018 wedding were irrelevant to the trial court's determination of whether McPherson agreed to pay for the gown. The trial judge's comments may indicate a belief that ordering the gown in November 2017 was not unreasonable. However, the reasonableness of the timeline for ordering the gown was irrelevant to the question presented to him for decision; whether McPherson breached a contract by failing to pay for the gown in full. The trial judge's comments, therefore, are irrelevant and certainly do not rise to the level of bias. *See In re Slaughter*, 480 S.W.3d 842, 852–53 (Tex. Spec. Ct. Rev. 2015) (noting acknowledgment by the First District Court of Appeals that "judges have their own personal opinions, but unless the movant can establish judicial bias, it is presumed that a judge will base her judgment upon the facts as they are developed at the trial."). Based on the record before us, we cannot conclude that the judgment was based on judicial bias. Accordingly, we overrule McPherson's third issue.

## CONCLUSION

For these reasons, we overrule McPherson's appellate issues. Accordingly, we affirm the trial court's judgment.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

181504F.P05

–19–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

KATRINA MCPHERSON,
Appellant

No. 05-18-01504-CV     V.

MELISSA LOPEZ, Appellee

On Appeal from the County Court at Law No. 5, Dallas County, Texas
Trial Court Cause No. CC-18-05725-E.
Opinion delivered by Justice Partida-Kipness. Justices Schenck and Osborne participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee MELISSA LOPEZ recover her costs of this appeal from appellant KATRINA MCPHERSON.

Judgment entered this 25th day of March, 2021.